UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION



FILED
MAR 03 2014
CLERK

| | | |
|---|---|---|
| LAURA DZIADEK, | * | CIV 11-4134-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | OPINION AND ORDER |
| | * | GRANTING IN PART |
| THE CHARTER OAK FIRE | * | AND DENYING IN PART |
| INSURANCE COMPANY, doing | * | SECOND MOTION |
| business as Travelers, | * | TO COMPEL |
| | * | |
| Defendant. | * | |

## I.    INTRODUCTION

Plaintiff Laura Dziadek (Dziadek) sued Defendant The Charter Oak Fire Insurance Company, doing business as Travelers (Charter Oak) alleging entitlement to certain insurance benefits and for bad faith refusal to pay. Doc. 1; Doc. 15. This case has a protracted discovery history. This Court has observed that "[i]t appears that both parties share blame for the sluggish pace of discovery." Doc. 36 at 1. Dziadek has filed her Second Motion to Compel, Doc. 49, seeking to compel responses to fourteen Requests for Production (Requests) and six Interrogatories. Dziadek also seeks attorney's fees. Doc. 49. Charter Oak opposes the motion. Doc. 58. For the reasons stated below, this Court grants in part and denies in part Dziadek's Second Motion to Compel. This Court denies Dziadek's motion for attorney's fees.

## II.    FACTS PERTINENT TO DISCOVERY DISPUTE

Dziadek's Second Motion to Compel seeks to compel responses beyond what Charter Oak thus far has provided in "Defendant's Response to Plaintiff's Request for Production of Documents (Third Set)," Doc. 59-2, and "Defendant's Responses to Interrogatories (First Set),"

Doc. 59-17.[1]  Dziadek made fifty-six requests for production and propounded seventeen interrogatories.  Doc. 59-2; Doc. 59-17.  Defendant's Responses were provided to Dziadek's former counsel on December 6, 2012.  Doc. 59-2 at 31; Doc. 59-17 at 12.  This Court's Second Amended Scheduling Order, Doc. 32, was in place at that time.  The Second Amended Scheduling Order stated:

1.   All discovery, including expert discovery, shall be commenced in time to be completed by **May 1, 2013**. . . . Disputes with regard to discovery shall be called promptly to the Court's attention by the making of an appropriate motion and shall not be relied upon by any party as a justification for not adhering to this pretrial schedule.

2.   Motions to compel discovery should be filed within 14 days after the subject matter of the motion arises.  Motions to compel discovery shall not be filed until the parties have complied with Local Civil Rule 37.1.

Doc. 32 (emphasis in original).

Charter Oak made unjustified objections to the discovery requests, such as objecting because Charter Oak believed that Dziadek's bad faith claim lacked merit and because Charter Oak believed nearly every discovery request was vague, ambiguous, overly broad, irrelevant and not reasonably calculated to lead to admissible evidence.  See Doc. 59-2; Doc. 59-17.  Charter Oak responded to many of the discovery requests substantively, but withheld some information being sought.  On December 27, 2012, Dziadek's former counsel sent Charter Oak's counsel a letter regarding shortcomings in Defendant's Responses.  Doc. 51-1.  Counsel agreed to a meet-and-confer on January 8, 2012, after which Charter Oak disclosed additional documents, supplemented some responses, and maintained objections to others.  Doc. 35-1 at 130.

---

[1] These documents will be referred to collectively as "Defendant's Responses."

The parties met and conferred again on April 16, 2013, after which they exchanged letters blaming each other for a lack of progress. See Doc. 35-1 at 140 (claiming that Dziadek was unwilling to engage in a genuine effort to resolve discovery issues); Doc. 51-3 (claiming that Charter Oak continued to assert improper objections despite Dziadek's efforts to resolve discovery issues). On April 30, 2013, the day before discovery was set to close, Dziadek's former counsel filed Dziadek's Third Motion to Continue, Doc. 34. Dziadek's former counsel stated that they "anticipate and expect . . . to file a second motion to compel in the coming days." Doc. 34-1 at 2. Charter Oak resisted the continuance. Doc. 35. This Court granted in part Dziadek's Third Motion to Continue, set the new discovery deadline as August 15, 2013, and ordered again that disputes "shall be called promptly to the Court's attention by the making of an appropriate motion" and that "[m]otions to compel discovery should be filed within 14 days after the subject matter of the motion arises." Doc. 36 at 2.

Dziadek's former counsel did not file a second motion to compel within "the coming days" as presaged. See Doc. 34-1 at 2. The next filings related to deposition subpoenas issued by Charter Oak seeking to depose Dziadek's former counsel, which were served on June 25, 2013. Doc. 38. On July 18, 2013, Dziadek's former counsel filed a Motion to Modify Subpoena, Doc. 37. This Court stayed the scheduled depositions of Dziadek's former counsel until after a hearing on the issue could be had because deposing counsel could trigger counsel's disqualification. Doc. 42; Doc. 38. This Court's Order, however, required that, except for the possible depositions of Dziadek's former counsel, "all other discovery shall be completed by August 15, 2013." Doc. 42 at 1.

On August 12, 2013, Dziadek's former counsel filed Dziadek's Fourth Motion to

3

Continue, Doc. 45, which Charter Oak resisted, Doc. 53. On August 15, 2013, the day discovery was to close, Dziadek's former counsel filed a Second Motion to Compel, Doc. 49. On September 5, 2013, this Court held a hearing on all three pending motions—the Motion to Modify Subpoenas, the Fourth Motion to Continue, and the Second Motion to Compel. At the hearing, Dziadek's former counsel recognized that they were fact witnesses on certain matters relating to this case and offered to withdraw as counsel once Dziadek could obtain substitute counsel. Doc. 56 at 1. This Court granted in part Dziadek's Motion to Modify Subpoenas, granted Dziadek's Fourth Motion to Continue, and reserved ruling on Dziadek's Second Motion to Compel until after Dziadek's new counsel could meet and confer with Charter Oak's counsel in an attempt to resolve discovery disputes and obviate the need for a ruling. Doc. 56 at 2.

On October 22, 2013, Dziadek's new counsel filed his notice of appearance. Doc. 57. Shortly thereafter, Dziadek's new counsel and Charter Oak's counsel met and conferred, resolved some discovery issues, failed to resolve other discovery issues, and thereafter resumed briefing Dziadek's Second Motion to Compel. Dziadek's motion seeks to compel discovery of material relating to eleven different issues and requests an award of attorney's fees. Doc. 50 at 2, 52.

On January 29, 2014, after briefing was completed and after this Court had begun its consideration of these issues, Charter Oak filed a Second Memorandum in Opposition, Doc. 66, which is not contemplated by this Court's local rules. See D.S.D. Civ. L.R. 7.1(B). Attached to that Memorandum was an exhibit listing different documents that Charter Oak produced. Dziadek disputes whether Charter Oak has produced all responsive documents. Because the extension of the discovery deadline was at hand, this Court advised counsel informally that an

4

opinion and order was forthcoming that would grant in part and deny in part the motion to compel and would enlarge the discovery deadline further. Thereafter, counsel had a spat over one attorney's response to this Court's email message and wanted to argue discovery issues to this Court. This Court then conducted a telephonic hearing on February 19, 2014, to address the motions ripe for discussion.

## II.   DISCUSSION

### A.   Timeliness of Motion to Compel

Charter Oak argues that Dziadek's Second Motion to Compel is untimely. Doc. 58. The Scheduling Order stated that "motions to compel discovery should be filed within 14 days after the subject matter of the motion arises" and that disputes regarding discovery "shall be called promptly to the Court's attention." Doc. 32. Charter Oak argues that Dziadek is not in compliance with the Order because she waited over eight months from the time the subject matter of this motion arose before seeking relief. Doc. 58 at 1-2. Dziadek counters that this Court's Scheduling Order did not mandate that motions to compel must be filed within fourteen days of the dispute arising and thus that her motion was timely filed prior to the discovery deadline. Doc. 59 at 8-10. Dziadek also argues that her delay in filing her motion was due to the meet-and-confer requirement and her efforts to resolve the discovery disputes which Charter Oak frustrated. Doc. 59 at 8-10.

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. Rule 37 does not contain an outer time limit for when a motion to compel must be filed by in order to be deemed timely. Voter v. Avera Brookings Med. Clinic, No. CIV. 06-4129-KES, 2008 WL 4372707, at *1 (D.S.D. Sept. 22, 2008). Some district courts limit by local rule the

5

time period within which a motion to compel must be filed. See e.g., United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) ("Local Rule 37.01 of the District Court for the District of South Carolina states that '[m]otions must be filed within twenty (20) days after receipt of the discovery response to which the motion to compel is directed.'"); Haviland v. Catholic Health Initiatives-Iowa, Corp., 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) (noting that Local Rule 37 of the District Court for the Southern District of Iowa "permits Motions to Compel to be filed up to fourteen days after the close of discovery"). This District has no such rule. Soltesz v. Rushmore Plaza Civic Ctr., No. CIV. 11-5012-JLV, 2013 WL 175802, at *4 (D.S.D. Jan. 16, 2013).

District courts have broad discretion in managing discovery, establishing and enforcing discovery deadlines, and maintaining compliance with discovery and pretrial orders, Williams v. TESCO Servs., Inc., 719 F.3d 968, 976 (8th Cir. 2013), and may direct in scheduling orders the date by which motions to compel must be filed, Soltesz, 2013 WL 175802, at *4-5; see also Voter, 2008 WL 4372707, at *1 (stating that district courts can set limits on motions to compel in its scheduling order). Ultimately, when deciding the timeliness of a motion to compel, a court must inquire into the "entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another." In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 331, 333 (N.D. Ill. 2005); see also Haviland, 692 F. Supp. 2d at 1044 ("Because no single rule or deadline can encompass the myriad of variations in discovery, . . . judges are given broad discretion to manage the overall process in the interests of dispatch and fairness.").

Generally, a court "may conclude that a motion to compel is untimely if the movant has unduly delayed." Soltesz, 2013 WL 175802, at *4 (citing 8B Charles A. Wright, et al., Federal

Practice & Procedure § 2285 (2d ed. 1994)).  When there is no "specific directive in the

scheduling order," in the District of South Dakota, motions to compel may be considered timely

if filed before discovery closes, but untimely if filed after discovery closes.  Voter, 2008 WL

4372707, at *1; Soltesz, 2013 WL 175802, at *4 ("If a motion to compel is filed prior to the

expiration of the discovery deadline, it is generally considered timely."); see also In re Sulfuric

Acid Antitrust Litig., 231 F.R.D. at 332 ("In one regard, however, a line of sorts has been

sketched by a series of decisions: motions to compel filed after the close of discovery are almost

always deemed untimely. . . .  Greater uncertainty occurs where the motion is made very close

to the discovery cut-off date.").[2]  In Soltesz, 2013 WL 175802, the scheduling order required that

motions to compel "shall" be filed within fourteen days of the dispute's origin.  Id. at *4-5.  The

defendant in Soltesz filed the motion to compel outside of the fourteen-day period.  Id.  Although

the motion was untimely as it was not in "strict compliance" with the scheduling order's "14-day

time frame for filing" a motion to compel, Magistrate Judge Veronica L. Duffy of this District

nevertheless permitted the untimely motion to proceed because there was "good cause" for the

delay.  Id. at *5.  The delay was not "undue" as the motion was filed just three weeks outside the

fourteen-day time frame and the non-moving party did not suffer prejudice.  Id.  Magistrate Judge

Duffy reasoned that a contrary ruling in Soltesz may encourage "parties to file 'hair-trigger'

---

[2] Counsel who wait to file a motion to compel until the discovery deadline or close to the discovery deadline run the peril of having the motion considered to be untimely as being brought with undue delay.  See e.g., Haviland, 692 F. Supp. 2d at 1044 (holding that magistrate judge did not commit clear error when he determined that a motion to compel filed before the close of discovery and within the time period permitted by the local rules for filing a motion to compel was untimely because it was made "far too late in the discovery process"); In re Sulfuric Acid Antitrust Litig., 231 F.R.D. at 337, 341 (rejecting as untimely a motion to dismiss filed on the day discovery was to close and eight months after the dispute arose).

discovery disputes" and because correspondence between the parties could have misled the moving party to delay in a mistaken belief that production was forthcoming. Id.

The language of this Court's Scheduling Order did not mandate that motions to compel be filed within fourteen days of the dispute, but stated that motions "should" be filed within fourteen days. Dziadek's Second Motion to Compel, filed much more than fourteen days after the dispute arose, thus is not in violation of the language of the Scheduling Order, although it is in violation of the spirit of the Scheduling Order, which required that discovery disputes "shall be called promptly to the Court's attention." Doc. 32. However, because the Scheduling Order's language was not a "specific directive[,]" the motion may be considered timely if filed before the discovery period closes. Voter, 2008 WL 4372707, at *1. Dziadek's motion was filed on the final day of the discovery period and is timely.

Dziadek was aware of these disputes as early as December 6, 2012. Her former counsel obtained a continuance while threatening a motion to compel on April 30, 2013. Her former counsel then waited another four months from that date to file her Second Motion to Compel as the discovery window was closing on August 15, 2013. Dziadek is correct in that the requirement to meet and confer "shows that the rules do not encourage hair trigger-motions." Doc. 59 at 9 (citing Soltesz, 2013 WL 175802, at *4). Nevertheless, timeliness is still an "important consideration[,]" 8B Wright et al, supra § 2285 (3d ed. 2010), and the meet-and-confer requirement should not be used to justify long delays before bringing motions to compel. See In re Sulfuric Acid Litig., 231 F.R.D. at 341 ("Nor am I persuaded that the approximately eight-month delay stemmed from the plaintiffs' wish 'to bring a single, focused motion . . . .'"); Haviland, 692 F. Supp. 2d at 1044 ("[T]he Court sees no reason why Plaintiffs could not have

8

upheld their ethical duty to attempt to resolve the discovery conflict without court action, yet still have made this motion at a much earlier date."). Dziadek could have satisfied the meet-and-confer requirement and still raised these issues much more promptly. Under these circumstances, the delay in bringing the motion to compel influences the decision on the propriety of sanctions under Rule 37(a)(5) of the Federal Rules of Civil Procedure and the scope of relief ordered, rather than prompting a refusal to consider the merits of the motion to compel. See 8B Wright et al., supra § 2288 (3d ed. 2010) ("If the motion is granted in part and denied in part the court is given more discretion under Rule 37(a)(5) and may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.").

### B. Scope of Discovery

The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is broad. Black Hills Molding, Inc. v. Brandom Holdings, LLC, No. CIV. 12-5051, 2013 WL 6092215, at *5 (D.S.D. Nov. 19, 2013) (citing 8B Wright et al., supra § 2007 (3d ed. 2010)). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507 (1947). A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy is construed broadly and encompasses "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 481 (D.S.D. 2012) (internal quotation marks and citation omitted). Once the requesting party has made its threshold showing that the evidence sought is relevant, the burden shifts to the resisting party who must "show specific facts

demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive." Id. The mere statement that an interrogatory or request for production was overly broad, burdensome, oppressive, or irrelevant is not adequate to prevail on such an objection. Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013 WL 1896825, at *6 (D.S.D. May 3, 2013).

Charter Oak objected to nine of the fourteen Requests for Production and to three of the six Interrogatories at issue here by arguing that the documents sought were irrelevant because Charter Oak did not believe that Dziadek had a reasonable bad faith claim. Doc. 59-2 at 7-11, 24-25, 28-29; Doc. 59-17 at 6, 7-8 (raising the same substantive objection to the Interrogatories as was raised to the Requests). As noted in this Court's Order on Dziadek's First Motion to Compel, "[e]ven if the insurer ultimately paid a claim, it 'may still be liable under a bad faith claim for unreasonably delaying payment of a claim if the insured suffered compensable loss as a result.'" Doc. 30 at 3 (quoting Lyon v. Bankers Life & Cas. Co., No. CIV. 09-5070-JLV, 2011 WL 124629, at *7 (D.S.D. Jan. 14, 2011)). "'[D]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.'" Alexander v. F.B.I., 194 F.R.D. 316, 326 (D.D.C. 2000) (quoting 8B Wright et al., supra § 2008 (2d ed. 1994)). Following this Court's Order, Charter Oak initially maintained this objection. See Doc. 51-4 at 6 (noting in a letter to Dziadek's former counsel that "[the claims handler's] personnel files are clearly irrelevant, given the absence of any claim under South Dakota law" because the "claim was paid promptly in full"). Charter Oak appropriately appeared to abandon this objection in its briefing, but Charter Oak's counsel focused a good share of his argument during the February 19, 2014 hearing on why Charter Oak believes Dziadek's bad faith claim to be unfounded. This sort of

objection and argument is one for summary judgment or trial; it is not proper as a discovery objection.

### C.  Discovery Issues

#### 1.        Request Number 6 - Organizational Chart

Dziadek seeks to compel production of an organizational chart or other "documents . . . showing the chain of command of Travelers claims office in Naperville, Illinois, including the personnel who handled or reviewed matters" concerning Dziadek. Doc. 59-2 at 7; Doc. 50 at 16; Doc. 59 at 18;. Dziadek argues, and this Court agrees, that organizational charts and documents showing the chain of command for the years 2009 through 2012 are relevant because the alleged bad faith occurred between 2009 and 2012 and those documents will show the organizational structure of the claims department.  Doc. 59 at 19-20.

Charter Oak in its brief does not argue that discovery of such organizational charts would be burdensome and does not contend that the documents sought in Request Number 6 are irrelevant.  Rather, Charter Oak represents that no organizational chart exists and ultimately that it produced a "directory for that Unit as of 2011, the relevant time frame . . . ." Doc. 58 at 5. The years 2009 through 2012 are the years during which the alleged bad faith is claimed to have occurred.   Charter Oak must produce organizational charts for the Naperville claims office for 2009 through 2012, including those who handled Dziadek's claim if it has any such documents, or alternatively must produce the directory for the claims unit that handled Dziadek's claims for the time frame of 2009 through 2012, if Charter Oak somehow has no organizational charts for those years.

#### 2.        Request Number 5 - Personnel Files

### a.   Claims Handlers and their Direct Supervisors

Request Number 5 seeks the "personnel files of Travelers employees who handled, reviewed, supervised, and/or audited Dziadek's claim, including persons in the chain of command above these individuals up to the head of the claims department." Doc. 59-2 at 6; Doc. 59 at 18; Doc. 59-2 at 7. Specifically, Dziadek requested production in Request Number 5 of the personnel files for the following persons: Faith Styles, Dana Barron, Brian Koerner, Diane Olson, Heather Wilken, Tara Walters, Timothy Westbrook, Amy Hennessy, and Dawn Midkiff. Doc. 59-2 at 6-7; Doc. 59 at 19-29. Dziadek also seeks the personnel files for claims handler Patricia Palaniuk, supervisor Phillip Castignet, and persons "in the chain of command." Doc. 50 at 21. Dziadek now has agreed not to seek the personnel files for administrative personnel Dana Barron, Diane Olson, Heather Wilken, and Tara Walters. Doc. 59 at 22. This section deals with the request for the persons who were involved in the handling or supervising of Dziadek's claim—Faith Styles, Brian Koerner, Timothy Westbrook, Amy Hennessy, Philip Castignet, and Patricia Palaniuk. Subsequent sections will address the discoverability of the personnel file for Dawn Midkiff and personnel files for individuals up the "chain of command."

Faith Styles handled Dziadek's claim in 2009. She was supervised by Timothy Westbrook and Brain Koerner. Doc. 58 at 5-6. Patricia Palaniuk handled Dziadek's claim at the time it was paid, much later than Dziadek desired it to be paid. Doc. 58 at 6. Patricia Palaniuk and Faith Styles reported to Brian Koerner. Doc. 58 at 5-6. Brian Koerner reported to Amy Hennessy, and Amy Hennessy reported to Philip Castignet. Doc. 58 at 6.

Dziadek argues that personnel files of claims handlers and their supervisors are always relevant in bad faith cases to determine how claims handlers and the insurance company reward

the handling of claims. Doc. 59 at 20.  In order to prove a bad faith denial of an insurance claim under South Dakota law, the plaintiff must show that the insurer denied a claim knowing there was no reasonable basis for the denial, or that the defendant acted with reckless disregard as to whether a reasonable basis existed to deny the claim. Lyon, 2011 WL 124629, at *7; see also Champion v. United States Fid. & Guar. Co., 399 N.W.2d 320, 324 (S.D. 1987); Anderson v. W. Nat. Mut. Ins. Co., 857 F. Supp. 2d 896, 903 (D.S.D. 2012) ("The Supreme Court of South Dakota first recognized a cause of action for insurance bad faith in Champion v. United States Fid. & Guar. Co., 399 N.W.2d 320 (S.D. 1987).").  Even if the insurer ultimately paid a claim, it "may still be liable under a bad faith claim for unreasonably delaying payment of a claim if the insured suffered compensable loss as a result." Doc. 30 (citing Lyon, 2011 WL 124629, at *7). Personnel files may be relevant in an insurance bad faith case to show some distorted financial incentive encouraging claims denials and thus may be relevant to a punitive damage claim as well.  See Anspach v. United of Omaha Life Ins. Co., No. CIV. 10-5080-JLV, 2011 WL 3862267, at *6 (D.S.D. Aug. 31, 2011) (citing Roth v. Farner–Bocken Co., 667 N.W.2d 651, 665-66 (S.D. 2003)).  Much of the personnel file is likely of limited relevance and the protective order and evidentiary rules applicable at trial will protect and screen personal material not relevant to any issue, or more unfairly prejudicial than probative, from disclosure or misuse.

"[C]ourts in the District of South Dakota have routinely found personnel files in insurance bad faith cases to be relevant and discoverable." Lillibridge, 2013 WL 1896825, at *9; see also Lyon, 2011 WL 124629, at 8. "However, personnel files also typically contain documents such as health care documents, life insurance, wages or salary, W-4s, I-9s, retirement account information, information about employees' bank accounts for purposes of electronic

deposits, and counseling information regarding employee assistance programs." Nye v. Hartford Accident & Indem. Co., No. CIV. 12-5028-JLV, 2013 WL 3107492, at *11 (D.S.D. June 18, 2013) (internal quotation marks and citation omitted). At some point, however, delving into personnel files becomes the sort of fishing expeditions that the discovery rules do not permit. See Hackett v. Standard Ins. Co., No. CIV. 06-5040, 2009 WL 3062996, at *8 (D.S.D. Sept. 21, 2009) adopted as modified, No. CIV. 06-5040-JLV, 2010 WL 1494772 (D.S.D. Apr. 14, 2010) (denying the discoverability of certain personnel files and stating that "[w]hile all discovery is a fishing expedition of sorts, 'the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water." (quoting Myers v. Prudential Ins. Co. of Am., 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008))); see also Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007) ("Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing' . . . ." (internal quotation marks omitted)).

Based on the cases decided previously in this Court, Dziadek has met her burden to show that personnel files sought in Request Number 5 for the claims handlers and their immediate supervisors—Faith Styles, Timothy Westbrook, Brian Koerner, Amy Hennessy, Philip Castignet, and Patricia Palaniuk—may contain relevant material. The burden shifts to Charter Oak to "show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive." Kirschenman, 280 F.R.D. at 481. Charter Oak does not argue that these files are irrelevant or argue that production would be burdensome. Instead, Charter Oak states that it has produced all personnel files for Faith Styles, Timothy Westbrook, and Brian Koerner. Dziadek disputes that Charter Oak has done so. With regard to the personnel files for

14

Patricia Palaniuk and Philip Castignet, Charter Oak states that it has produced Patricia Palaniuk
and Philip Castignet's "performance evaluations" which "contain all relevant personnel file
information concerning claim handling performance for Ms. Palaniuk and Mr. Castignet, a fact
explained to [Dziadek's] counsel. There is no other relevant information in their, or any
employee's, personnel file . . . . This issue has been resolved." Doc. 58 at 6. From Dziadek's
perspective, the issue has not been resolved. The personnel files and not simply the
"performance evaluations" of these individuals are discoverable, and Charter Oak has not met
its burden to limit discovery of certain personal material to "performance evaluations." Concerns
regarding the confidential nature of these documents may be addressed under the protective
order. Charter Oak must produce the complete personnel files (redacting Social Security
numbers, home addresses and personal phone numbers of current employees, employee bank
account information, employer sponsored benefit plans not providing incentives based on claims
handling or profitability, and any medical benefits or treatment information) for Faith Styles,[3]
Timothy Westbrook, Brian Koerner, Amy Hennessy,[4] Patricia Palaniuk, and Philip Castignet.

At the hearing on February 19, 2014, the parties continued to debate whether all such
personnel files have been produced. After repeated questions from this Court, Charter Oak's

---

[3] This Court in its First Order on Motion to Compel, Doc. 30, compelled production of
"Faith Styles' personnel file" as well as "all documents relating to, describing, or promoting
incentive plans in effect with respect to Faith Styles, including periodic updates to the plans
(subject to protective order, if necessary)." Doc. 30 at 5. Charter Oak was permitted to redact
Social Security numbers only and "withhold production of documents regarding Ms. Styles that
relate to employer sponsored benefit plans, unless those plans provide any incentives based on
how Ms. Styles handles claims. Defendant may mark appropriate materials as 'confidential.'"
Doc. 30.

[4] Charter Oak does not dispute the discoverability of Amy Hennessy's personnel file and
it has agreed to produce her file. Doc. 58 at 6.

15

counsel ultimately acknowledged that there was a "scorecard" for Faith Styles's claims handling during the relevant period that has not been produced but will be. Charter Oak is to produce "scorecards" for the above-listed individuals and any information about any bonuses the above-listed individuals received from 2006 through 2012 and how such bonuses were calculated, regardless of whether that information was kept in their personnel files or elsewhere.

### b.   Personnel File of Dawn Midkiff

Request Number 5 seeks personnel files for those persons who "handled, reviewed, supervised, and/or audited" Dziadek's claim including Dawn Midkiff. Doc. 59-2 at 6. Dziadek's claims file states Faith Styles "met with cov counsel to discuss" and that "it appears driver would not be insured under our policy." Doc. 59-9 at 1. In its Rule 26(a)(1) initial disclosures, Charter Oak listed "As yet to be identified Coverage Counsel" at Travelers as a person likely to have discoverable information. Doc. 59-8 at 2-3. The Rule 26(a)(1) initial disclosures state that "In house Counsel consulted by Faith Styles - can confirm that requested coverage information was related to liability coverage - - - not UIM claim." Doc. 59-8 at 3. Discovery revealed that the in-house counsel whom Faith Styles consulted at Travelers was Dawn Midkiff. Doc. 59-3 at 6. Dziadek argues that Dawn Midkiff's personnel file is relevant because she is the attorney who told the claims handler that the policy did not provide coverage in the first instance. Doc. 59 at 22. Her file, Dziadek argues, could show for example incentives to reduce claim payouts. Doc. 59 at 23.

Charter Oak raises two separate issues in this section. First, Charter Oak objects to the discoverability of Dawn Midkiff's personnel file. Doc. 58 at 6. Second, Charter Oak attempts to claw back its previous disclosures about Dawn Midkiff. Doc. 58 at 6. This Court initially will

address Charter Oak's attempts to claw back its previous disclosures before addressing the discoverability of her personnel file.

Charter Oak disclosed through the claims notes that Faith Styles consulted with an in-house counsel, who was later identified as Dawn Midkiff, and what Dawn Midkiff's opinion was. Doc. 58 at 6. The parties dispute whether this allegedly inadvertent disclosure waived the attorney-client privilege related to that communication. Doc. 58 at 7; Doc. 59 at 24. Rule 502 of the Federal Rules of Evidence governs when an inadvertent disclosure of privileged documents during a federal proceeding operates to waive that privilege. Rule 502(b) provides as follows:

> When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

The disclosure by Charter Oak of the fact that Faith Styles communicated with, and received advice on coverage from, in-house counsel who was identified as Dawn Midkiff may not have been inadvertent. Charter Oak listed in-house counsel as having discoverable information in its initial disclosures. Doc. 59-9 at 3. Charter Oak in this case has asserted:

> Charter Oak obtained and reviewed the Billion Policy provisions deemed relevant to evaluating whether Ms. Peterson qualified as an insured under the Garagekeeper's coverage form. Charter Oak reviewed

17

those terms with representatives for Billion and with in-house counsel.
All concurred that Ms. Peterson did not qualify as an insured under the
Policy.

Doc. 26-36 at 3 (internal citations omitted). Charter Oak during the February 19, 2014 hearing

advised that Midkiff will not be a witness at trial and that Charter Oak does not assert an advice-

of-counsel defense, which represents a different course than what Charter Oak previously took.

Nevertheless, there exists doubt here whether the disclosure of Midkiff's advice was inadvertent.

Even if the disclosure of Dawn Midkiff's opinion in the claims notes was inadvertent,

Charter Oak has not met the second or third elements of Rule 502(b). Charter Oak has not

established that it took reasonable steps to prevent the inadvertent disclosure. Charter Oak also

did not take reasonable steps to rectify in a timely manner its disclosure. The disclosure that

"[a]s yet to be identified Coverage Counsel" (who was later identified as Dawn Midkiff) had

discoverable information was made on December 1, 2012. Dziadek avers that Charter Oak did

not raise this issue in any of the meet-and-confer sessions. Doc. 59 at 24. Charter Oak

apparently raised this issue for the first time in its brief in resistance to this motion on December

8, 2013. A delay of more than two years since the disclosure before raising the issue is not a

reasonable step made to rectify the error. Therefore this disclosure does not meet Rule 502's

requirements and operated as a waiver of the privilege related to the disclosure.

Charter Oak's only objection to the discoverability of Dawn Midkiff's personnel file is

that it is not relevant because she "was not involved" in handling or reviewing Dziadek's claim.

See Doc. 58 at 7. Charter Oak's contention that Dawn Midkiff "was not involved" conflicts with

its previous disclosures that Faith Styles consulted in-house counsel Dawn Midkiff and that in-

house counsel has discoverable information. Doc. 59-8 at 3. The relevance of Midkiff's

18

personnel file again centers on possible incentives she might have to counsel denial of claims. While some claims representatives and managers at some insurance companies may receive such bonuses or pay increases tied to claims handling, it would seem highly unlikely for in-house counsel to be so compensated.  Dziadek has received information on how Charter Oak employees are compensated, and there is apparently no suggestion there that Midkiff's compensation gives her an incentive to counsel that claims be denied. This Court orders Dawn Midkiff's personnel file to be submitted ex parte for the Court's in camera review, together with any possible "scorecards" or material relating to bonuses, and pay increases to Midkiff and how those bonuses or pay increases were calculated for the years 2006 through 2012.

### c.      Chain of Command Personnel Files

Dziadek seeks additional personnel files for those further up the "chain of command." Doc. 59-2 at 6-7.  The rulings of this Court require production of the personnel files of the claims handlers (Faith Styles and Patricia Palaniuk), the supervisor of the claims handlers (Brain Koerner), the supervisor of the supervisor of the claims handlers (Amy Hennessy), and the supervisor of the supervisor of the supervisor of the claims handlers (Phillip Castignet). Dziadek has made no showing that this is not far enough up the chain of command to ferret out any inappropriate incentive as a part of personnel/policies.  At some point, the quest for personnel files becomes too far attenuated from those people who dealt with the claim or supervised those who dealt with the claim and thus no longer is "reasonably calculated to lead to the discovery of admissible evidence" under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

There is varying authority in this District on where to draw the line on production of personnel files in insurance bad faith cases.  In some instances, judges in this District have

19

ordered that the personnel files for all supervisors or for those persons in the chain of command were subject to discovery. See e.g., Burke v. Ability Ins. Co., 291 F.R.D. 343, 351-52 (D.S.D. 2013) (compelling production of files for those "who handled, supervised, audited and/or reviewed Plaintiff's claim, as well as the personnel files of all persons in the chain of command above those persons"); Kirschenman, 280 F.R.D. at 482-83 (compelling production of the personnel files, including bonuses and incentive information, for all supervisors up the chain of command). Other times, judges in this District have required production only of personnel files for "each employee, manager, supervisor . . . who was involved in plaintiff's claim." See e.g., DeKnikker v. Gen. Cas., No. CIV. 07-4117, 2008 WL 1848144, at *2 (D.S.D. Apr. 23, 2008) (refusing production of the personnel file of the supervisor of a claims handler because that supervisor was not "directly involved in the decisions about plaintiff's claim"). The United States Court of Appeals for the Tenth Circuit observed:

> personnel files often contain sensitive personal information, just as pharmacy files do, and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. Indeed, the Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression . . . .'" Herbert v. Lando, 441 U.S. 153, 177 (1979) (quoting Fed. R. Civ. P. 26(c)(1)); see also Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994) (no abuse of discretion where "privacy interests, coupled with [the district court's] determination to keep the trial focused . . ., justified limiting [plaintiff's discovery of] personnel files").

Regan-Touhy v. Walgreen Co., 526 F.3d 641, 648-49 (10th Cir. 2008) (internal quotation marks omitted).

Here, the production of personnel files up to the supervisor of the supervisor of the

supervisor of the claims handlers is far enough. Dziadek has no information that anyone above that level had anything to do with her claim. What Dziadek really is after is information on financial incentives that may or may not exist to prompt Charter Oak employees to deny claims that ought to be paid. Together with what else Dziadek is receiving and her opportunity to conduct depositions, she will be able to ferret out whether Charter Oak had such an incentive program without obtaining personnel files for those who had no part in handling her claim.

> **3.**      **Requests Number 11 and Number 13 - Bonus, Compensation, and Incentives for Employees**

Request Number 11 states "[p]roduce any and all documents that reference bonus or award programs available to <u>supervising</u> personnel who handled or reviewed any matter concerning [Dziadek] from January 1, 2005 to the present. This includes supervisors, managers, or any other individuals up to the head of the claims department." Doc. 59-2 at 10 (emphasis in original). Request Number 13 states "[p]roduce any and all documents that related to the manner in which personnel handling claims, including supervisory personnel, might receive increases in salary, bonuses, commissions, or awards." Doc. 59-2 at 11. Charter Oak's brief in resistance does not persist in objecting to these requests, but maintains that it produced all responsive documents. Doc. 58 at 9. Dziadek argues that Charter Oak has made only a partial production of responsive documents for low-level Charter Oak employees who handled her claim and has produced no responsive documents for upper-level employees. Doc. 59 at 29-30. Dziadek contends that Charter Oak has produced one sixteen-page document that outlines Travelers/Charter Oak's compensation philosophy, has not produced information on any bonus programs, and has withheld responsive documents identified within the sixteen-page document. Doc. 59 at 29-31.

21

Dziadek argues that bonus plans and incentives for claims department employees, including supervising personnel and those up the chain of command, are relevant to her bad faith claim and her punitive damage request. Doc. 59 at 31. "It is well established in this district that information about bonuses and increases for upper-level employees is generally discoverable in cases alleging that an insurance company acted in bad faith in denying an insured's claim in violation of South Dakota law." Hurley v. State Farm Mut. Auto. Ins. Co., No. CIV. 10-4165-KES, 2012 WL 1600796, at *4 (D.S.D. May 7, 2012); see also Lillibridge, 2013 WL 1896825, at *11 (granting request to compel production for any bonus, compensation, or incentive documents for any "claim personnel[,]" incentive goals and how they relate to manager bonuses, and "[a]ny and all documents which relate to incentives given to claims examiners or managers" for any reduction in payouts); Kirschenman, 480 F.R.D. at 486 (requiring production of information on "all bonus and awards which it made available for any person up the chain of command"); Lyon, 2011 WL 124629, at *9-10 (granting motion to compel request for "[a]ny and all . . . documents that reference bonus programs applicable to any long term care claims department personnel . . ." and for all documents "which inform long term care claims personnel of the manner in which they can expect to get increases in salary, bonuses, or commissions"). Thus, the documents sought, including for the supervising personnel in the claims department who did not handle Dziadek's claim, are relevant and discoverable.

Charter Oak states that there is no dispute and that it "has produced the requested data for all of the people who were involved with Plaintiff's claim." Doc. 58 at 9. This response is only partly responsive to the Requests. Request Number 13 seeks documents related to how "supervisors" receive bonuses. Charter Oak must produce any documents relating to how the

"personnel handling claims, including supervisory personnel, might receive increases in salary, bonuses, commissions, or awards." Doc. 59-2 at 11.

### 4. Request Number 12, Interrogatories Numbers 8 and 9 - Goals, Targets, and Objectives

Document Request Number 12 states "[p]roduce any and all documents referring to goals, targets, or objectives which are or have been communicated to claims personnel or supervisory personnel involved with med pay, bodily injury or underinsured (UIM) claims from January 1, 2005 to the present." Doc. 59-2 at 10-11. Interrogatory Number 8 states "[i]dentify each and every person responsible for the creation, setting, and management of goals for claims personnel to improve average total costs (payments) per claim." Doc. 59-17 at 6. Interrogatory Number 9 states "[i]dentify each and every person responsible for the creating, setting, and management of all bonus programs for claims personnel or their supervisor." Doc. 59-17 at 6.

Documents referring to goals, targets, or objectives for claim payments are relevant to bad faith claims and are discoverable in this District. See e.g., Lillibridge, 2013 WL 1896825, at *11; Lyon, 2011 WL 124629, at * 10 ("Claims ratios are inherently tied to bonus programs."). Further, scorecards are discoverable in bad faith cases. See Fair v. Royal & Sun Alliance, 278 F.R.D. 465, 476 (D.S.D. 2012). Charter Oak argues that Dziadek does not need answers to these interrogatories because she already has the information. The documents sought in Request Number 12 and Interrogatories Number 8 and Number 9 are discoverable, and the requests are not overly broad. Charter Oak has not met its burden to show the documents are irrelevant or their production will be unduly burdensome. Charter Oak shall produce documents responsive to Dziadek's Document Request Number 12. Charter Oak shall supplement appropriately its answers to Plaintiff's Interrogatories Number 8 and Number 9.

5.      **Requests Number 7 and Number 8 - Targets, Cost Containment, and Profitability**

Request Number 7 states "[p]roduce any and all documents related to cost containment programs or efforts to lower the cost with respect to handling claims since January 1, 2005." Doc. 59-2 at 8. Dziadek, by using the term "cost containment," seeks "documents related to containing indemnity costs (claim payments)" and not information about "programs to reduce unallocated or allocated adjustment expense (general overheard for the claim department, or specific claim handling expenses for any specific claim)." Doc. 59 at 37. The term "programs" refers to "information related to general initiatives (many of which are given names by the company) and not actions taken on a single claim." Doc. 59 at 37. Request Number 8 states "[p]roduce any and all documents related to efforts to increase profitability with respect to claims handling since January 1, 2005." Doc. 52 at 9.

In Kirschenman, 280 F.R.D. 474, Magistrate Judge Duffy of this District compelled production of documents related to cost containment, profitability, and loss ratios in a case of a similar nature. Id. at 483-84. The plaintiff in Kirschenman did not seek "information about attempts to save money in individual claim files or single instances, but rather . . . documents related to company programs, campaigns, or initiatives designed to influence employee behavior on a systematic and wide-spread basis throughout the company." Id. at 483. Such material can be relevant to insurance bad faith claims.

The burden therefore shifts to Charter Oak to "make a specific showing of facts from which the court could conclude that the discovery . . . is not relevant, or that the relevance is marginal and outweighed by the expense, burden or embarrassment of providing the discovery." Id. at 485. Charter Oak resists discovery by arguing the requests are "vague, ambiguous, unduly

24

burdensome and overly broad fishing expeditition[s]." Doc. 58 at 10.  Charter Oak argues that discovery of these documents is improper because "Plaintiff is simply speculating that there were some orchestrated efforts to increase profitability and/or lower costs" and "speculation is an improper basis for her motion."  Doc. 58 at 10-11 (internal quotation marks and citation omitted).  Lastly, Charter Oak objects arguing that "[t]here was no such orchestrated effort to increase profitability and/or reduce costs on decisions regarding coverage for Plaintiff's claims." Doc. 58 at 11 (internal quotation marks and citation omitted).  That all may be true, but Dziadek is entitled to conduct discovery to satisfy herself of that.  Charter Oak of course can avail itself of the benefit of the protective order when producing any such documents.  Charter Oak shall produce documents responsive to Requests for Production Number 7 and Number 8, within the refined definitions of "cost containment programs."

### 6. Request Number 15, Number 39, and Number 47, and Interrogatory Number 2 - Training Materials

Requests Number 15, 39, and 47, and Interrogatory Number 2 seek to have Charter Oak identify and produce any and all training materials used to train claims handlers; training materials reviewed by Faith Styles, Tim Westbrook, and Brian Koerner; and manuals or policy handbooks used to train Tim Westbrook, Brian Koerner, or others who supervised Faith Styles. Doc. 59-2 at 11, 22, 24; Doc. 59-17 at 3.  Dziadek presently seeks twenty-four documents in satisfaction of these four discovery requests.  Doc. 59 at 40-41 (requesting that Charter Oak be required to produce "materials for the 24 training courses listed").  Charter Oak states that Dziadek "modestly narrowed her 'training materials' discovery demands."  Doc. 58 at 13. Dziadek frames the issue differently, stating that "[m]ore recently Travelers agreed to produce materials for 24 courses" but "now says it cannot produce 3 of them."  Doc. 59 at 38.  Thus,

Charter Oak does not object to the discoverability of twenty-one of the twenty-four items that Dziadek seeks and therefore is ordered to search for and produce those documents if they exist.

Charter Oak indicates that it cannot produce two documents—"7189, Institutional Bad Faith and Written Discovery" and "12191, Uninsured - Underinsured Motorist Coverage"—because they "were online courses sponsored by an organization called Property Loss Research Bureau (PLRB). Charter Oak does not have any documents from those online courses."[5] Doc. 58 at 13-14. If Charter Oak does not have possession or control of such materials, it cannot produce them. Charter Oak has identified them sufficiently for Dziadek to seek to subpoena them from the entity in possession of the materials if Dziadek really desires them.

The final document at issue is Charter Oak's "Principles of Good Faith Claim Handling." Charter Oak argues that this document is protected by the attorney-client privilege. Doc. 58 at 14. State law determines the applicability of the attorney-client privilege in diversity jurisdiction cases such as this one. Fed. R. Evid. 501. The attorney-client privilege protects "the confidentiality of communications between attorney and client for the purpose of obtaining legal advice." Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 317 (D.S.D. 2009). The party asserting the privilege must establish the existence of four elements: "'(1) a client; (2) a

---

[5] PLRB is an insurance industry trade association that is owned and operated by insurance companies and underwriters. SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., Ltd., No. 02 C 8133, 2003 WL 145419, at *1-2 (N.D. Ill. Jan. 21, 2003). PLRB offers a number of services to its members. About PLRB, http://plrb.org/about/aboutus.html (last visited February 10, 2014). PLRB's website states that the focus of its services "is the claims handling needs of member insurers." Id. Further, the PLRB "concern[s] itself with, and encourage[s] productivity and efficiency in, the property and liability loss and claim adjustment processes of members and the industry as a whole." Id.

26

confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services; and (4) the communication was made in one of the five relationships enumerated in SDCL 19-13-3.'" Hurley, 2012 WL 1600796, at *3 (quoting State v. Catch the Bear, 352 N.W.2d 640, 645 (S.D. 1984)). To carry its burden, the asserting party must provide facts to establish the necessary elements. Signature Dev., LLC v. Mid-Continent Cas. Co., No. CIV. 11-5019-JLV, 2012 WL 4321322, at * 24 (D.S.D. Sept. 18, 2012). "South Dakota common law and the Federal Rules of Civil Procedure require a party to produce a privilege log if the party believes that documents sought during discovery are protected by the attorney-client privilege . . . ." Black v. Pilot Travel Ctrs., LLC, No. CIV. 09-4170-KES, 2011 WL 3421595, at *2 (D.S.D. Aug. 4, 2011); see also Rabushka ex rel. U.S. v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) (holding that a party meets its "burden of providing a factual basis for asserting the privileges when it produce[s] a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel"); Hurley, 2012 WL 1600796, at *3 ("If a party claims that the attorney-client privilege protects a document, then it must submit a privilege log to the requesting party."). This Court has "reiterated the necessity of providing a privilege log when asserting the attorney-client privilege in refusing to comply with a discovery request." Hurley, 2012 WL 1600796, at *3; see also Black, 2011 WL 3421595, at *2-4 (holding that a party has a "*mandatory* obligation to produce a privilege log" and failing to produce such a log until so ordered justified an award of attorney's fees against the refusing party).

Here, Charter Oak has withheld "Principles of Good Faith Claim Handling" without producing an accompanying privilege log, despite being ordered to do so by this Court. Doc. 58

27

at 5 (admitting that Charter Oak withheld the "Principles of Good Faith Claim Handling" without producing a privilege log to Dziadek); Doc. 59 at 39-40. Because of this failure, "[Charter Oak] failed to meet its procedural duty under the federal rules." Hurley, 2012 WL 1600796, at *3.

Moreover, Charter Oak bears the burden to satisfy the four elements of the attorney-client privilege, Brown Bear, 266 F.R.D. at 317, yet it has failed to present facts establishing the elements necessary to extend the privilege to "Principles of Good Faith Claim Handling." The basis of Charter Oak's privilege argument is a contention that "Item No. 12 titled 'Principles of Good Faith Claim Handling' was prepared and presented by in-house Travelers counsel to provide confidential legal advice to claim personnel. The attorney-client privilege applies to that document." Doc. 58 at 14. Charter Oak's "mere assertion that documents exist that are so privileged" is insufficient to carry its burden. Signature Dev., LLC, 2012 WL 4321322, at *24. If Charter Oak has a "*bona fide* claim of privilege" to any of the documents contained in this manual, then it shall produce to the Court for an in camera review within fourteen days of this Order those portions of the document deemed privileged and shall produce the remainder to Dziadek with a privilege log. Id.; see also Hurley, 2012 WL 1600796, at *3 (noting that the attorney's "failure to follow clearly established procedure should not result in attorney-client privileged documents being released to the detriment of the client"). If Charter Oak has no bona fide claim of privilege, it shall produce the documents to Dziadek directly. If this Court's review of whatever portion of "Principles of Good Faith Claim Handling" that gets submitted in camera reveals that the privilege assertion is bogus, this Court will order sanctions against Charter Oak.

### 7. Screen Shots

The issue of the production of screen shots was resolved between the parties and is moot.

### 8.        Request Number 56 - Charter Oak's In-House Counsel Manual

Request Number 56 asks Charter Oak to "[p]roduce the 'in house' legal counsel policy, personnel manual, or similar document, for 'in house' legal counsel such as Dawn Midkiff." Doc. 59-2 at 29. Dziadek argues that legal manuals are relevant because Charter Oak disclosed that Faith Styles consulted with in-house counsel, who was identified as Dawn Midkiff, before denying the claim, and procedural guidelines could contain policy interpretations. Doc. 59 at 42. Charter Oak maintains two objections. First, Charter Oak states that there was no "in house claim manual in existence at that time." Doc. 58 at 15. Dziadek does not believe Charter Oak in this regard. Second, Charter Oak maintains that even if there were responsive documents, these documents would be protected by the attorney-client privilege. Doc. 58 at 15. Dziadek's motion to compel is granted only to the extent that, if there is any such document responsive to this request, Charter Oak shall produce to this Court within fourteen days of this Order the documents and furnish a privilege log to Dziadek.

### 9.        Interrogatory Number 12 - Mitigation of Punitive Damages

Interrogatory Number 12 asks Charter Oak to "[i]dentify all facts and/or circumstances concerning Travelers' action and those of its agents, including any mitigating circumstances, which may operate to reduce, without wholly defeating, the award of punitive damages." Doc. 59-17 at 8. Charter Oak objects to this interrogatory. Doc. 59 at 44.

Dziadek argues that this is a proper contention interrogatory. A contention interrogatory asks "'another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts.'" Black Hills Molding, Inc., 2013 WL 6092215, at *8 (quoting In re Grand

29

Casinos, Inc., Sec. Litig., 181 F.R.D. 615, 618 (D. Minn. 1998)); see also B. Braun Med., Inc. v. Abbott Labs., 155 F.R.D. 525, 527 (E.D. Pa. 1994) ("Contention interrogatories ask a party: to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position, with respect to how the law applies to facts; or to state the legal or theoretical basis for a contention."). A fact-based interrogatory, on the other hand, is one that seeks to identify witnesses and documents. Black Hills Molding, 2013 WL 6092215, at *8. "As to requests for opinions or contentions that call for the application of law to fact, [contention interrogatories] can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Fed. R. Civ. P. 33 advisory committee notes, 1970 Amendment. For example, in Twigg v. Pilgrim's Pride Corp., No. 3:05-CV-40, 2007 WL 676208 (N.D.W. Va. Mar. 1, 2007), an interrogatory asked the defendant to "[s]tate each fact upon which Defendant bases its affirmative defense that Plaintiff failed to mitigate her damages." Id. at *11-12. This interrogatory was deemed a proper contention interrogatory. Id. Contention interrogatories are not objectionable merely because the answer involves an opinion, but courts may defer requiring an answer to contention interrogatories until the end of discovery. B. Braun, 155 F.R.D. at 527.

Dziadek's Interrogatory Number 12 is not asking for an explanation and facts supporting a mitigation of damages defense. Although the failure of a plaintiff to mitigate compensatory damages in an affirmative defense in South Dakota, Jurgensen v. Smith, 611 N.W.2d 439, 442 (S.D. 2000), there is no such affirmative defense as a failure to mitigate punitive damages in South Dakota, Schaffer v. Edward D. Jones & Co., 552 N.W.2d 801, 810 (S.D. 1996) (outlining the factors used in reviewing a jury's punitive damage award and considering mitigating

30

circumstances within discussion of those factors). Punitive damages are to punish and deter wrongdoers and turn on the defendant's conduct. Id. at 810-11. Rather, Dziadek's interrogatory seeks to have Charter Oak assume that punitive damages will be awarded against Charter Oak, which Charter Oak obviously contests. It is an interrogatory designed to induce an answer that might imply that Charter Oak foresees punitive damage exposure and thus might be used at trial to suggest Charter Oak contemplates punitive damage exposure; it is not an interrogatory designed to obtain discoverable information. Dziadek knows full well why Charter Oak believes that punitive damages ought not to be awarded. This interrogatory is one on which Dziadek should have yielded during the meet-and-confer process. This Court is not going to compel Charter Oak to attempt to answer a "catch-22" type interrogatory by which it must assume that it will be liable for punitive damages.

### 10. Request Number 55 - Prior Testimony of Employees

Request Number 55 asks Charter Oak to "[p]roduce all deposition transcripts and affidavits prepared for or by Faith Styles, Tim Westbrook, Brian Koerner, Dawn Midkiff, or any other person involved in matters concerning Laura Dziadek, regarding any other bad faith claim against the Defendant or Travelers or any of its entities." Doc. 59-2 at 28. Employee deposition testimony relating to prior bad faith claims is relevant in this bad faith suit. See e.g., Lillibridge, 2013 WL 1896825, at *8; Kirschenman, 280 F.R.D. at 490. Deposition testimony from prior bad faith litigation may be relevant to help determine the degree of reprehensibility of an insurer's conduct if punitive damages should be awarded. Lillibridge, 2013 WL 1896825, at *5.

Charter Oak has produced no documents related to Request Number 55 because it contends it does not have any. Originally, Charter Oak lodged blanket objections that are not

sufficient to defeat discovery. See Doc. 59-2 at 28-29. Now Charter Oak states "that records are not kept identifying lawsuits in which employees or agents have testified as witnesses and that Charter Oak does not maintain records identifying bad faith claims involving specific claim personnel." Doc. 58 at 16 (internal quotation marks omitted). Charter Oak does not contend the information is irrelevant. Dziadek doubts Charter Oak's assurance that responsive documents do not exist. Charter Oak must produce documents responsive to Request Number 55 if it has such documents. If Charter Oak has possession or control of any prior deposition testimony of the employees listed, it must provide that testimony to Dziadek.

### 11. Interrogatory Number 6 - The Relationship Between Travelers and Charter Oak

In Interrogatory Number 6, Dziadek sought a description of "the business relationship between Charter Oak, its parent company, Travelers, and other Travelers subsidiaries." Doc. 59-17 at 5. After several standard objections, Charter Oak announced that "Charter Oak is 100 percent owned by Travelers Indemnity Company." Doc. 59-17 at 5. This answer is partial and Charter Oak readily should have provided a more complete answer through the meet-and-confer process. Dziadek is entitled to more information on the "business relationship," but what information Dziadek wants cannot be discerned by this Court based on reference to the somewhat vague term "business relationship."

During the February 19, 2014 hearing, Charter Oak's counsel disclosed additional information about the business relationship between Charter Oak and Travelers Indemnity Company. During the hearing, it was apparent that Dziadek's counsel had some different notions of Travelers Indemnity Company than did Charter Oak's counsel. Counsel are directed to meet and confer, figure out if deposition questioning is a superior manner by which to obtain

information about Charter Oak and Travelers Indemnity Company, or if a more thorough interrogatory answer is the way to resolve this dispute. If this Court has to revisit this issue, some party is going to get sanctioned under Rule 37.

### 12. Requests Number 44 and Number 46, and Interrogatory Number 15 - Recorded Statements or Conversations

Interrogatory Number 15 seeks answers as to whether Charter Oak has audio recordings of conversations related to Dziadek's claim. Doc. 50 at 49. And if Charter Oak has such recordings, Request Number 44 and Number 46 seek their production. Doc. 50 at 20. Charter Oak responded to the Interrogatory by stating that "it has produced documents from which the answer to the Interrogatory may be derived." Doc. 59-17 at 9. Charter Oak responded to these Requests that seek "recorded statements" and "recordings that relate in any way to Laura Dziadek, Lori Peterson, or the accident" by stating that it has produced the entire claims file related to Dziadek's claim. Doc. 59-2 at 23-24. Charter Oak in its brief states that "all responsive documents would have been in the claim file, that the claim file was produced in its entirety, and there are no other documents to produce." Doc. 58 at 17. Charter Oak says it has confirmed "there is nothing else." Doc. 58 at 17.

Dziadek argues that recordings of the phone calls are relevant to contradict Charter Oak's apparent defense that Dziadek's former counsel called to inquire whether the policy at issue covered Lori Peterson, but did not inquire as to whether the policy provided UIM coverage for Dziadek. Doc. 59 at 52. Apparently no recordings are preserved or included in claims files according to Dziadek. Doc. 59 at 52. Charter Oak is ordered to search anew for any such recordings and to produce any actual recordings if they still exist.

### D. Attorney's Fees

33

If a motion to compel discovery is granted, "the court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed R. Civ. P. 37(a)(5)(A).  But, expenses and fees should not be awarded if the non-moving party was substantially justified in refusing discovery or if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i-iii).

Dziadek has prevailed on some but not all of the Second Motion to Compel. As noted above, Dziadek violated the spirit of the Scheduling Order in delaying bringing the motion to compel.  Dziadek's discovery requests were at times beyond the breadth of Rule 26 of the Federal Rules of Civil Procedure, and Dziadek refused to compromise off of some of those overbroad requests.  Charter Oak's boilerplate objections were inappropriate and Charter Oak produced far less than it should have initially, stalled discovery, and was less forthcoming through the meet-and-confer process than it should have been.  Neither side has engaged in discovery in a manner that this Court would expect.  Accordingly, this Court declines to award sanctions at this time, but defers that decision to see what, if anything, gets submitted in camera and whether the parties cooperate to complete discovery, and, if not, which party is to blame.

## IV.    CONCLUSION

For the reasons explained in this Opinion and Order, it is hereby

ORDERED that Dziadek's Second Motion to Compel, Doc. 49, is granted in part and denied in part.  It is further

ORDERED that Charter Oak must produce an organizational chart for the Naperville claims office for 2009 through 2012 including those who handled Dziadek's claim, or if there are

no such charts, the directory for that claims unit for 2009 through 2012 in response.  It is further

ORDERED that, in response to Request for Production Number 5, to the extent that it has not already done, Charter Oak shall produce the personnel files for Faith Styles, Timothy Westbrook, Brian Koerner, Patricia Palaniuk, Amy Hennessy, and Philip Castignet. Charter Oak may make the authorized redactions of all Social Security numbers, all medical benefits or treatment information, employee bank account information, personal phone numbers, and home addresses of current employees; may mark the documents as "confidential;" and may withhold the production of documents regarding these individuals that relate to employer sponsored benefit plans, unless those plans provide any incentives based on how employees handle claims. The disclosure is to include any "scorecards" or information on bonus or incentive payments from 2006 to 2012 and how that was calculated for the above-listed employees.  Such information and personnel file information regarding Dawn Midkiff shall be provided to this Court for in camera review within fourteen days of this Order.  If any documents are withheld under a claim of privilege, Charter Oak shall produce a privilege log to Dziadek. It is further

ORDERED that Charter Oak must produce documents responsive to Requests for Production Number 11 and Number 13 if it has any. This includes documents related to how the personnel handling claims, including their supervisory personnel, might receive increases in salary, bonuses, commissions, or awards and includes any "scorecards" for those employees listed in the paragraph immediately preceding this one. It is further

ORDERED that Charter Oak shall produce documents responsive to Request for Production Number 12 and supplement its answer to Interrogatories Number 8 and Number 9. It is further

ORDERED that Charter Oak shall produce documents responsive to Requests for Production Number 7 and Number 8 within the refined definition of "cost containment programs" if it has responsive documents.  It is further

ORDERED that Charter Oak shall produce the twenty-one of the twenty-four documents sought by Dziadek in satisfaction of her training materials discovery requests in Requests for Production 15, 39, and 47, as well as Interrogatory Number 2, that is reproduced at Doc. 50 at 37-38 and Doc. 58 at 13 that Charter Oak has agreed to search for and produce.  Charter Oak need not produce "7189, Institutional Bad Faith and Written Discovery" and "12191, Uninsured - Underinsured Motorist Coverage" unless Charter Oak has them in its possession or control. Charter Oak must produce "Principles of Good Faith Claim Handling" unless it has a bona fide claim of privilege.  If it has a bona fide claim of privilege, it shall produce those parts of "Principles of Good Faith Claim Handling" deemed privileged within fourteen days of this order to this Court for in camera review and provide a privilege log to Dziadek.  It is further

ORDERED that Charter Oak shall search anew and produce documents responsive to Request for Production Number 55 if it has any such documents in its possession or control.  It is further

ORDERED that counsel meet and confer and determine the best method of Charter Oak providing Dziadek with information on its "business relationship" with Travelers.  It is further

ORDERED that Charter Oak shall produce documents responsive to Request for Production Number 44 and Number 46 if it has them.  It is further

ORDERED that Charter Oak supplement its discovery responses to comply with this order within twenty-one calendar days hereof.  It is further

36

ORDERED that the Fourth Motion to Continue, Doc. 45, is granted to enlarge the discovery deadline by sixty-three calendar days hereof.  It is further

ORDERED that Dziadek's Second Motion to Compel is otherwise denied.  It is finally

ORDERED that Dziadek's request for attorney's fees is denied at this time and deferred pending the completion of discovery.

Dated March 3rd, 2014.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE