**United States District Court**
**District of South Dakota**
**Southern Division**

| | | |
|---|---|---|
| **LAURA DZIADEK,** | ) | **File No. Civ. 11-4134-RAL** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Plaintiff's Brief in Response to Defendant's** |
| | ) | **Motion for Summary Judgment** |
| **The Charter Oak Fire Insurance** | ) | |
| **Company, d/b/a "Travelers",** | ) | |
| | ) | |
| **Defendant.** | ) | |

**[TEMPORARILY REDACTED, SUBJECT TO PLAINTIFF'S MOTION TO UNSEAL]**

Mike Abourezk
Dan Holloway
ABOUREZK LAW FIRM
P.O. Box 9460
Rapid City, SD 57709
Tel. (605) 342-0097 / Fax. (605) 342-5170
Email: mike@abourezk.com
dan@abourezk.com
Attorneys for Plaintiff

1

## INTRODUCTION

*Beware of the half-truth.  You may have gotten hold of the wrong half.*

– unknown

Travelers Summary Judgment Motion hinges on several false propositions of law, combined with a disregard of key facts.  When the correct principles of law are applied to all the material facts, Travelers' motion for summary judgment not only fails – it falls flat.

**1.     Travelers invents a new and fictitious definition of "a claim."**

Travelers' first "legal fiction" is its argument that Laura Dziadek *made no claim* in 2009, since her lawyer supposedly *didn't specify which coverage provisions applied*, nor did he *demand benefits under any specific provision*.[1]  Travelers says that when Laura did finally demand UIM and Med Pay benefits in 2012, Travelers promptly paid.[2]  Therefore, Travelers says, it never denied "a claim," and without a denial, Laura cannot sue for bad faith. But Travelers' "no claim" argument relies on a newly invented definition of the word "claim."  In reality, under the policy here the word "claim" is merely a colloquial expression that means the insured has given the insurer notice of an accident or loss.

The policy here expressly governs the steps required of an insured to recover

------

[1] See, e.g., Charter Oak Memorandum in Supp. Motion for Summary Judgment, pp. 1, 2, 13, 23, 25 ("Plaintiff's bad faith claim must be dismissed because her UIM and AMP claims were paid – not denied. Policy limits were paid on those claims on February 21, 2012 – promptly after attorney Cole made his first and only demand for payment on January 17, 2012, and promptly after those claims matured on February 3, 2012 ... ." – brief at p. 25); see also Ex. P17, Styles' Depo. pp. 158, 169-71 179-80, 186-190, 208-209.

[2] *Id.*

2

benefits owing under the policy, and it does NOT require the insured to tell Travelers which coverage provisions apply.  Therefore, Laura fulfilled the policy requirements in February 2009.  It simply requires that the insured give Travelers *notice of the facts related to the accident or loss*.[3]  The South Dakota Supreme Court agrees, holding that the insured has no duty to name specific coverage provisions.[4]

Nothing in the policy says that Travelers is obligated to pay only if the insured figures out that coverage applies and names the applicable coverage.  The law imposes a duty to <u>investigate coverage</u> on the insurer – not on the insured.[5]  Nor does the law allow an insurer to shift that duty back to the insured.[6]  The policy says "we will pay" when the facts of the loss meet the conditions of coverage.[7]

Travelers' claim manual also admits that a "claim" begins when Travelers receives notice of the <u>facts</u> surrounding an accident or loss, and that Travelers has the responsibility of comparing the facts of the loss to the policy and identifying *all* available

---

[3] Ex. P1 (policy) at BILLION POLICY 37 (emphasis added).

[4] See *Eide v. Southern Surety Co.*, 226 NW 555, 556 (S.D. 1929)("In making a proof of loss, appellant [the insured] was not obliged to ... use the language of the policy for the purpose of that description, nor to elect upon which of the clauses in the policy the claim might be made.") See also discussion and cases cited at p. 30, *infra.*

[5] *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, 556 NW2d 68, 70 (S.D. 1996).

[6] *Hansen v. Mutual of Omaha*, 2003 U.S. Dist. LEXIS 28242, *11 (D.S.D. 2003).

[7] *E.g.,* Ex. P1, policy, pp. BILLION POLICY 49.

coverages.[8] ████████████████████████████

██████████████████  ██████████████████████

███████████████████  Similarly, Billion's insurance agent, who

specializes in selling policies to auto dealerships,[11] says when he reported this claim on

Billion's behalf, he would <u>not</u> have requested any specific type of coverage, or named any

specific policy provisions,[12] but instead he would merely report the facts of the accident.[13]

He says it's not his job to tell the insurance company which coverage to apply.[14]  Nor is it

the insured's job to do that.[15]  He says that Travelers knows what coverages its own

policies provide.[16]  Therefore, Laura's claim was "mature" in February 2009.

### 2.     Travelers denied Laura's claim for coverage in 2009.

Although Travelers argues in its brief that "Plaintiff's bad faith claim must be

---

[8] Ex. P42, Knowledge Guide, pp. Charter Oak 3059, 3035, 3038, 3042, 3048 (emphasis added) [SEALED].

[9] Ex. P12, Hennessey Depo. pp. 17-19, 284;   Ex. 18, Palaniuk Depo. 118-119.

[10] *Id.*

[11] Ex. P8, Barnes Depo . 38.

[12] Ex. P8, *Id*. at pp. 46.-47, 51-52, 64-65.

[13] Ex. P8, *Id*. at pp. 33-38.

[14] Ex. P8, *Id*. at pp. 34-35.

[15] Ex. P8, *Id*. at p. at 35.

[16] Ex. P8, *Id*. at pp. 89-90.

dismissed because her UIM and AMP claims were paid - not denied,"[17] this argument is specious.  First, this Court itself has pointed out to Travelers on several previous occasions that an insurer can still be liable for bad faith even though it eventually paid the claim.[18]  Second, Travelers' argument that it never denied the existence of coverage for Laura Dziadek is simply false.  In a letter referencing "YOUR CLIENT: Laura Dziadek," Travelers told Jeff Cole that "no coverage exists for your client under this policy."[19]  It is hard to imagine a more explicit denial of coverage.  Therefore, Laura's bad faith claim is completely warranted.

Moreover, in cases involving allegations of fraud in relation to a contract, SDCL 53-4-5 says the existence of actual fraud is <u>always</u> a question of fact.  South Dakota case law says the same thing.[20]  Travelers attempts to circumvent this overt claim denial by

---

[17]  Travelers' Brief, p. 25.

[18]  See *Dziadek v. Charter Oak Fire Ins. Co. d/b/a Travelers*, 2014 U.S. Dist LEXIS 26703, P16 (D.S.D. March 3, 2014)(Lange J.)("As noted in this Court's Order on Dziadek's First Motion to Compel, "[e]ven if the insurer ultimately paid a claim, it 'may still be liable under a bad faith claim for unreasonably delaying payment of a claim if the insured suffered a compensable loss as a result.'""); See also *In Re Certification of Question of Law from the U.S. Dist. Ct.*, 399 NW2d 320, 322 (S.D. 1987)(adopting the rule that an insurer's violation of its duty of good faith and fair dealing constitutes a tort, as well as breach of contract, and that "<u>such tortious conduct is demonstrated when there is unreasonable delay in performing under a contract</u> ... ."); *McDowell v. Citicorp, USA*, 2007 NW2d 53, P16, 734 NW2d 14, 19 (S. D. 2007)(it is not necessary to show a per se denial of benefits in order to assert a claim for bad faith, since "denial of benefits may be inferred from the insurer's failure to process or pay a claim."), citing *Kirschoff v. Am. Cas. Co*, 997 F.2d 401, 405 (8th Cir. 1993).

[19]  Ex. P19, 2/12/2009 letter from Styles to Cole.

[20]  *Railsback v. Mid-Century Ins. Co.*, 2004 SD 64, 680 NW2d 652, 655-56 (S. D. 2004)(if the record supports any reasonable inference supporting a fraud claim, the matter is a question of

submitting an Affidavit from Faith Styles saying her denial letter doesn't mean what it says.[21]  Travelers claims that Styles' intent in writing this letter was to merely reflect that no liability coverage existed for Lori Peterson, the at fault driver.[22]  But all Travelers accomplishes with this maneuver is to create an issue of fact regarding Styles' intentions. Neither the Court or a jury is required to accept and believe Travelers' affidavits – in fact, for purposes of summary judgment, the Court must draw all reasonable inferences in favor of the <u>non-moving party</u>. Thus, a genuine issue of material fact is created by Travelers' own evidence.

## STATEMENT OF FACTS

Traveler' policy contains a provision called the "Duties in the Event of an Accident or Loss" clause.  It says that:

**Duties In The Event of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   a.   In the event of "accident," claim, "suit" or "loss," you  must give us or our authorized representative prompt *notice of the accident or  "loss*." Include:

      (1) How, when and where the "accident" or "loss" occurred;

---

fact and summary judgment is inappropriate): *Bertelsen v. Allstate Ins. Co.*, 2013 SD 44, P, 53-54 (S.D. 2013)(reversing the trial court's entry of summary judgment because Allstate's intent in failing to pay benefits was a question of fact precluding summary judgment).

   [21]  Travelers Brief, p. 6.

   [22]  *Id*. at 6-7, 26-27.

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.[23]

b.    Additionally, you and any other involved "insured" must:

(3) cooperate with us in the investigation ... of the claim ... ."

\*  \*  \*

The word "you," is defined elsewhere in the policy as meaning the *named* insured as set forth in the Declarations. In this case, that's Billion Empire Motors, Inc. [24]

Travelers received notice of the accident from Billion.[25] Travelers also received notice from Laura's sister, and Laura's attorney, Jeff Cole.[26] Laura herself had difficulty communicating because of injuries that included vocal cord paralysis.[27]

Travelers opened a claim file under Laura's name, and assigned her a claim number.[28] Travelers claim notes list the "*notice received* date" as 1/30/2009, and include Laura's name, address, date of birth, gender, occupation, location and details of the

---

[23] Ex. P1 (policy) at BILLION POLICY 37 (emphasis added). The provision goes on to require other miscellaneous matters, but doesn't require the claimant to specify any particular coverage or request any specific benefits in order to trigger Travelers' obligations.

[24] Ex. P1 (policy) at BILLION POLICY 00002 (declarations).

[25] Ex. P2, Travelers' claim notes, TRVLR 6.

[26] Ex. P2, Travelers' claim notes, TRVLR 6, 8, 9.

[27] *Id.*

[28] *Id.*

accident and injuries.[29] The claim notes consistently refer to Laura as "CLMT" (claimant).[30]

Billion told Travelers' claim representative, Faith Styles, that a Billion customer, Lori Peterson, went to sleep at the wheel of a Billion loaner vehicle, crashed the vehicle, badly injuring herself and a passenger.[31] Billion also gave Styles the name of Lori Peterson's insurer, Progressive Insurance.[32] Styles then contacted Progressive and spoke with Loren Sedevie, the Progressive adjuster handling the claim.[33]

The facts of the accident clearly alerted Progressive to a potential UIM claim, because Progressive's claim notes say: "the IGP's [injured party's] INJ far exceed our policy limits,"[34] and a Progressive supervisor inserted this question in the claim notes: "does she has (sic) any UIM coverage out there?"[35]

Even more importantly, Progressive explicitly alerted Travelers to the potential UIM claim, because Styles' claim notes show Sedevie telling her that "*Progressive's*

---

[29]  Ex. P3, Travelers' claim worksheets and notes, pp. Charter Oak 6000-6001.

[30]  *Id.*, pp. Charter Oak 6000-11, 6039-43.

[31]  *Id.*, p. Charter Oak 6041.

[32]  *Id.*

[33]  *Id.*

[34]  Ex. P6, Progressive's claim notes, p. 23.

[35]  *Id.*, p. 7

*policy limit is $100,000 and the value of the claim has already exceeded that.*"[36] Styles'

note continues, saying "Meds are at about 100,000 to date and she [Laura Dziadek] is a

nurse so the wage loss will be substantial."[37]

And of course Styles also knew that the facts gave rise to a Med Pay claim,

because Styles herself documented that "meds are already at about $100,000."[38]

Travelers received the police accident report on January 30, 2009.[39]  It contains all

the information required by Travelers' Notice of Loss provision, and more.[40]  A few days

later, on February 2, 2009, Styles spoke with Laura Dziadek's sister, Mae Schafer.[41]  Like

Laura herself, her sister Mae is a Registered Nurse,[42] and she gave Styles even more

specific information about the seriousness of Laura's injuries.  According to Styles' claim

notes, Schafer told her that:

> 1.  Medical rescue personnel airlifted Laura from the crash site to
>     Sanford Hospital by helicopter.
>
> 2.  Injuries include multiple fractures of the sternum, 6 fractured ribs on
>     the left, shattered left humorous; left avulsion fracture, 4 fractured

---

[36]  Ex. P3, Travelers' claim worksheets and notes, p. Charter Oak 6041 (emphasis added).

[37]  *Id.*

[38]  *Id.*

[39]  *Id.,* p. 6042.

[40]  *Id.*

[41]   *Id.*, p. 6043.

[42]  *Id.*

thoracic vertebrae at T1, T2, T3, and T4.

3.     Laura's vocal chords are paralyzed and she cannot speak.

4.     Laura remained hospitalized at Sanford from 9/22 until 10/16 when she transferred to a nursing home until 12/31.

5.     Mae Schafer then took Laura to Mae's home in Hartford, S.D., for 2 weeks, and on 1/3/09 Laura's other sister, also an RN, assumed her care at her home in Fargo, N.D.

6.     Laura goes to physical therapy every day.

7.     Laura is able to walk, but must have someone with her 24/7 as she is at risk for falls.

8.     Laura is also at risk for choking since her vocal chords are paralyzed and do not close when she swallows. Her physicians do not expect this to improve.

9.     She currently wears a back and neck brace. No longer wears an ankle brace, but has calcium deposits in her heel causing constant and severe pain.[43]

On February 6, 2009, Attorney Jeff Cole called Travelers on Laura's behalf and spoke with Faith Styles. Cole says he asked Styles about coverage for either Laura or for Lori Peterson, and says Styles told him the policy provided <u>no coverage for either one</u>.[44]

████████████████████████████████████████

████████  ██████████████████████████████

---

[43]   *Id.*

[44]   Ex. P10, Cole Depo. p. 122.

[45]   Ex. P17, Styles' Depo. pp. 158, 169-71 179-80, 186-190, 208-209.

███████████████████ This conflicting testimony alone creates an issue of fact

regarding fraud and bad faith.

After the phone call, Styles went over the facts of Laura's loss with her supervisor,

Tim Westbrook.[47] ████████████████████████████

████████████████████████████████████

██████████████████████ ██████████████████████

████████████████████████████████

███████████████████████████

████████████████████████████████

██████████████████████ Styles claim notes here show that she investigated the

UM/UIM offset for worker's compensation payments in her questioning of Mae Schaffer,

when she asked whether Laura's worker's compensation insurer had "stepped up" to

make payments.[50]   Styles' investigation of worker compensation received by Laura

creates yet another reasonable inference that Styles investigated and understood the UIM

implications of Laura's injuries.

Styles and Westbrook say they met with Travelers' "coverage counsel," Dawn

---

[46]  *Id.*

[47]  Styles 4/21/2015 affidavit, para. 14-15.

[48]  ████████████ ████████████████████

    ██ ██████████ ██████████████████

[50]  Ex. P2, Travelers' claim notes, p. TRVLR 8.

Midkiff, and Midkiff advised them to deny liability coverage for Lori Peterson.[51]  But



After the meeting with Midkiff, Styles wrote Jeff Cole a letter. The "subject line"

says *"YOUR CLIENT: Laura Dziadek."[54]*  The first sentence of the letter then says: "[w]e

have reviewed the facts of this loss in conjunction with the policy issued to our insured

and it is our determination that <u>no</u> <u>coverage</u> <u>exists</u> <u>for</u> <u>your</u> <u>client</u> under this policy."[55]

Then her letter goes on to also say that Lori Peterson is not an insured, and the policy

---

[51]  Styles 4/21/2015 affidavit, para. 21-22; Westbrook 4/20/2015 affidavit, para. 13.

[52]  Ex. P13, Midkiff Depo pp 66-67, 109-111.

[53]  Ex. P13, Midkiff Depo. p. 111.

[54]  Ex. P19, 2/12/2009 letter from Styles to Cole.

[55]  *Id.*

affords Peterson no liability coverage.[56]

Cole didn't know it at the time, but almost <u>none</u> of the statements made in Styles' letter were actually true. Style's claim that *"no coverage exists for your client"* wasn't true because Laura met the definition of "who is an insured" in the UIM and Med Pay coverage definitions.[57]

Styles' claim that "we *have reviewed the facts of this loss in conjunction with the policy* and determined that no coverage exists for your client," is another false statement. Travelers now claims it didn't even *consider* coverage for Laura, let alone *investigate coverage* for her.[58]

Finally, Styles' claim that Lori Peterson didn't qualify for liability coverage is also false. The definition of "who is an insured" relied on by Travelers to disqualify Lori Peterson, is called a "step-down" clause.[59] South Dakota allows Step-down provisions, *but only when set forth in a separate endorsement* so it's clear and obvious to any reader. See SDCL §58-11-9.3; see also *Mid Century Insurance Co. v. Lyon,* (step-down clause

---

[56] *Id.*

[57] Travelers admitted Laura's status as an insured in its Answer to this lawsuit.  Amended Complaint and Answer (Docs 15 and 16), ¶¶ 24, 36.

[58] Travelers' brief at 26; See also Ex. P17, Style Depo. pp.  158, 169-171, 179-180, 186-190, 208-209.

[59] See *Mid Century Insurance Co. v. Lyon*, 1997 S.D. 50, ¶2, 562 NW2d 888, 889 (S.D. 1997).

ruled invalid because not set forth in a separate endorsement).[60] Travelers' step-down provision appears in the ordinary policy provisions, making it unenforceable. So Lori Peterson had $1 million in liability coverage all along, and Styles' statement that Peterson had no coverage was false.[61]

When Cole received Style's letter, wrote back asking her for a *"true and correct copy of the policy."*[62] But Styles didn't send him one. Instead, she sent *excerpts,* along with a letter saying "[p]lease pay particular attention to the pages which I have marked because they address the issue of 'who is an insured.'"[63] Styles gave Cole the step-down definition that Laura did NOT meet, but didn't give him the UIM or medical expense definitions that Laura DID meet.[64]

Progressive offered its $100,000 liability limits to Laura on February 24, 2009 –

---

[60]  1997 SD 50, ¶10, 562 NW2d 888, 892.

[61]  If Peterson had liability coverage for $1 million, the Court may wonder how that affects  Laura's eligibility for UIM coverage. The only effect is that it makes Laura eligible under the definition of <u>uninsured</u> motorist coverage instead of <u>under</u>-insured coverage.  The definition of <u>uninsured</u> motorist does <u>not</u> require that <u>Peterson had no insurance whatsoever</u>; instead it provides three different ways to qualify: (1) when no liability policy provides at least the minimum required by law; <u>or</u> (2) <u>an insurer denies coverage</u>; <u>or</u> (3) the accident is caused by an unidentified hit and run driver.  Ex. P1, policy, pp. 50-51.  Since Travelers denied liability coverage for Lori Peterson, that brings the vehicle squarely within the definition of an uninsured motor vehicle.  The fact that Peterson had separate coverage for $100,000 is <u>not</u> a disqualification under the UIM definition of Travelers' policy.

[62]  Ex. P20, 2/18/2009 letter from Cole to Styles.

[63]  Ex. P22, 3/5/2009 letter from Styles to Cole.

[64]  *Id.*; Ex. P46, Cole Affidavit, ¶¶3-6.

approximately two weeks after Styles' letter to Cole.[65]  But since Progressive  conditioned that offer on a full release and hold harmless agreement,[66] Jeff Cole rejected Progressive's offer.[67]  Laura's medical bills alone already exceeded $100,000, and signing a release might compromise her right to collect additional compensation in the event Cole located any other sources of viable coverage.[68]

Cole spent the next 2 years exploring every conceivable avenue of compensation for Laura, even though he felt the prospects of recovery were weak at best.[69]  He filed suit against the State Department of Transportation and its contractors and investigated whether improper placement of detour signs or missing guard rails contributed to the crash. It all led nowhere, and eventually Cole dismissed each of these claims.[70]

But before accepting Progressive's $100,000 tender, Cole asked his partner, Dan Brendtro, to review the file looking for any alternative that might help Laura. Brendtro wondered if the policy provisions Cole requested two years earlier, but Travelers hadn't produced, might somehow change the outcome. He and Cole decided to find out.[71]

---

[65]  Ex. P21, 2/24/2009 letter from Progressive to Cole.

[66]  Ex. P23, 6/16/2009 letter from Cole to Progressive; Ex. P46, Cole Affidavit, ¶8.

[67]  Ex. P46, Cole Affidavit, ¶8.

[68]  Ex. P46, Cole Affidavit, ¶8.

[69]  Ex. P46, Cole Affidavit, ¶11-12.

[70]  Ex. P46, Cole Affidavit, ¶11-12.

[71]  Ex. P46, Cole Affidavit, ¶ 15-16.

15

They directed paralegal Jennifer Doubledee to contact Faith Styles on July 15, 2011, and request the entire policy. Styles refused, telling Doubledee the policy might be a couple thousand pages.[72] In reality the entire policy, including all declarations and endorsements, is 259 pages long.[73] But Doubledee didn't know that, so then she asked for just the UM/UIM provisions.[74] Styles agreed, but she didn't send them. On July 21, Doubledee contacted Styles again.[75] On July 22, Styles finally mailed the missing provisions.[76]

Reviewing these coverages, Brendtro discovered that Laura met the definition of "an insured" for UIM benefits. So Brendtro wrote to Faith Styles on July 28, 2011, asking Travelers to confirm Laura's status as an "insured" for UIM coverage.[77]

Travelers stamped and filed Brendtro's letter on August 1, 2011.[78] But Travelers

---

[72] Ex. P24, 7/15/2011 email string; Ex. P25, 7/28/2011 letter from Brendtro to Styles, p. 2.

[73] Ex. P1, Policy.  The 441 pages of policy documents included by Travelers in its exhibits comprises policy documents spanning a two year time period.  See Docket Nos. 119-1 to 119-12.

[74] Ex. P24, 7/15/2011 email string.

[75] *Id.*

[76] *Id.*

[77] Ex. P25, 7/28/2011 letter from Brendtro to Styles, p. Charter Oak 1000.

[78] *Id.*, see stamp in lower right corner indicating "Received Aug 01, 2011, Naperville Claims."

didn't respond to it.[79]  Two months later Travelers still hadn't responded, despite South Dakota law requiring insurers to respond to communications on claims within 30 days.[80] So on September 20, 2011, Cole and Brendtro filed suit on Laura's behalf, asking the Court to declare Laura's status as an insured, and also alleging bad faith, fraud, and breach of contract.[81]

After it got sued, Travelers finally admitted that Laura qualified as an insured for both UIM and Med Pay coverage.[82] But rather than just paying, Travelers first tried using the money it owed Laura as leverage to extract a *release of her bad faith claims against Travelers*.[83] It didn't work.[84]

Travelers finally paid its policy limits minus the $100,000 available from Lori Peterson's coverage – a total of $905,000.

---

[79] SDCL 58-33-67(1) defines unfair or deceptive acts in the business of insurance as including failure to respond to communications with respect to claims within 30 days.

[80] SDCL 58-33-67(3).

[81] Docket 1.

[82] Docket 15, ¶¶ 24, 51; Docket 16, ¶¶ 24, 51.

[83] Ex. P46, Cole Affidavit, ¶¶22-23

[84] In *Isaac v. State Farm Mut. Auto Ins. Co.*, the South Dakota Supreme Court held that an insurer's attempt to obtain a release of bad faith claims is sufficient evidence to support a finding of malice for purposes of imposing punitive damages.  522 NW2d 752, 762 (S.D. 1994).

**ARGUMENT**

**ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT**

1.      **The issue of whether Travelers committed breach of contract, fraud or bad faith must be determined by a jury.**

Travelers letter to Jeff Cole on February 12, 2009 references "YOUR CLIENT, Laura Dziadek," followed by the statement that "no coverage exists for your client under this policy."[85]  That statement is undisputedly false because Travelers later admitted in its Answer to Plaintiff's Amended Complaint that coverage did exist for both UIM as well as Med Pay benefits.[86]

Travelers tries to negate the false statements in Styles' February 12 letter by having her submit an Affidavit claiming that her letter doesn't mean what it says.[87]  But the trier of fact is not obligated to accept that explanation.  Indeed, for purposes of summary judgment, the Court must view the evidence in the light most favorable to Plaintiff – not Travelers.  So at best, Styles' Affidavit simply raises a question of fact as to her intent.

Travelers may attempt to portray Styles' statement that "no coverage exists for your client" as truthful, arguing that Laura dismissed resolved her claims against all third

---

[85]  Ex. P19, 2/12/2009 letter from Styles to Cole.

[86]  See Plaintiff's Amended Complaint (Docket No. 15) ¶24, stating that Laura qualified as an "insured" under the UIM endorsement, and Travelers' Amended Answer (Docket No. 16) to ¶24, admitting that allegation. Travelers also admits that Laura qualified as an insured under the Med Pay endorsement.  See Amended Complaint (Docket No. 15) ¶51, and Travelers' Amended Answer (Docket No. 16).

[87]  Styles 4/21/2015 affidavit.

18

parties.  But that argument fails for several reasons.

First of all, the <u>Med Pay provision</u> contains no such conditions, yet, Styles still told Cole that "no coverage" existed for his client.  Thus, Styles' statement is still false regardless of Travelers' excuses.   Second, Travelers' "condition precedent" argument actually gets Travelers into <u>more</u> trouble, not <u>less</u> trouble.  The South Dakota Supreme Court has expressly ruled that when an insurer denies coverage on the basis of the insured's failure to meet conditions required by the insurer, without the insurer disclosing those conditions to the insured, the insurer commits statutory deceit under SDCL 20-10-2(3).[88]  That is precisely the result reached by the Court in *Biegler v. American Family Ins. Co.*[89]

And that is precisely what happened here.  ████████████████████████████ ████████████████████████████████████████████████████████████████ and not only did Travelers fail to tell Cole it wouldn't investigate any coverage Cole didn't specifically name, but Travelers actually told Cole just the opposite, saying:  "we have investigated the facts of this loss and have determined that no coverage for your client exists under this

---

[88]  See SDCL 58-33-67(3) (Unfair or deceptive practices when dealing with an insured include "failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim ... .)"

[89]  2001 SD 13, 621 N.W.2d 592, 598-600 (S.D. 2001); see also SDCL 20-10-2(3), which provides that the definition of deceit includes "suppression of a fact by one who is bound to disclose, or who gives information of other facts which are likely to mislead for want of communication of that fact.".

[90]  Ex. P17, Styles Depo. pp. 158, 169-71 179-80, 186-190, 208-209.

policy."[91]   Then when Cole asked for a "true and correct" copy of the policy so he could see for himself, Travelers didn't give him one. Instead it gave him *excerpts* that supported Travelers' denial, and withheld the policy provisions that supported coverage.[92] Then, when Brendtro discovered the coverage and asked Travelers to confirm, Travelers simply ignored his request.  Then, when Cole and Brendtro sued for bad faith, Travelers finally agreed to pay, but tried to use the money owed to Laura as leverage to obtain a release of Laura's bad faith claim.  All of these facts provide a reasonable basis to infer that Travelers committed bad faith and fraud in an effort to deprive Laura of $905,000 in coverage.

Moreover, whether an insurer acted in bad faith has routinely been held to present a question of fact for the jury.[93]

### 2.   The policy doesn't require an insured to identify specific coverage provisions.

Travelers insinuates that unless the insured tells Travelers which <u>specific coverage provisions</u> to investigate, Travelers doesn't consider whether benefits are owing. But the policy doesn't allow Travelers to do that.[94]

---

[91]   Ex. P19, 2/12/2009 letter.

[92]   Ex. P22, 3/5/2009 letter.

[93]   *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶8, 556 NW2d 68, 70 (SD 1996); *O'Daniel v. Hartford Life Ins. Co.*, 2013 U.S. Dist. LEXIS 188540, *99 (D.S.D. 2013)("bad faith is typically a qustion of fact "and" the court can determine issues of fact at summary judgment only if reasonable minds could not differ as to the facts.")

[94]   Ex. P1, policy excerpts, p. BILLION POLICY 37.

The "Duties in the Event of an Accident" provision, quoted in the Statement of Facts above, defines the information the insured must provide in order to trigger Travelers' duty to investigate and determine coverage.  It requires only that "[i]n the event of "accident," claim, "suit" or "loss," you must give us or our authorized representative prompt notice of the accident or "loss," including: "(1) How, when and where the "accident" or "loss" occurred; (2) The "insured's" name and address; and (3) To the extent possible, the names and addresses of any injured persons and witnesses."[95]

### 3.    Special rules of construction apply to notice provisions.

"Under South Dakota law, notice provisions are to be to be strictly construed against the insurer." Kremer *v. American Family Mut. Ins. Co.,* 501 N.W.2d 765, *768 (SD 1993), citing *Breeden v. Aetna Life Ins. Co.,* 23 S.D. 417, 122 N.W. 348, 349 (1909).

Applying a strict construction of Travelers' notice provision only makes  the invalidity of Travelers' argument more glaring. "Strict construction" means, at a minimum, that the policy cannot be interpreted to include requirements that aren't explicitly stated in the notice provision itself.

The South Dakota Supreme Court also applies the principle of <u>constructive notice</u> to notice requirements in insurance policies. *Kremer*, at 768.  SDCL §17-1-4 says that "Every person who has *actual notice of circumstances sufficient to put a prudent man*

---

[95]  Ex. P1, Policy at 37.  The "Duties" section goes on to require cooperation with Travelers' investigation and other miscellaneous matters, but doesn't require the claimant to specify any particular coverage or request any specific benefits. Ex. P1 (policy) at BILLION POLICY 37 (emphasis added).

*upon inquiry as to a particular fact*, and who omits to make such inquiry with reasonable diligence, *is deemed to have constructive notice* of the fact itself."[96]

Travelers knew Laura Dziadek's losses exceeded Peterson's $100,000 liability limits with Progressive, because Progressive told Travelers so. Travelers recorded that fact in its claim notes, saying: "*Progressive's policy limit is $100,000 and the value of the [Dziadek] claim has already exceeded that.*"[97]   Indeed, Progressive had no difficulty recognizing the UIM issues.  Progressive's claim notes say: "Does she has (sic) UIM coverage out there?[98]   Thus, at a minimum, Travelers had constructive notice of a UIM claim.  Travelers also had notice of medical expenses of approximately $100,000, an amount far exceeding Travelers' $5,000 medical expense coverage. So Travelers also had constructive notice of a claim for Med Pay benefits.

Finally, even if Laura's notice of a UIM claim were somehow defective, the South Dakota Supreme Court joins the majority of other jurisdictions by adopting the "notice-prejudice rule." That rule mandates that an insurer cannot refuse coverage on the basis of a defect in notice, unless the insurer can show *actual prejudice*.[99] As the South Dakota Court explained in *Hansen,* as long as the insurer is given <u>an opportunity to investigate</u>

---

[96]   See also *Kremer*, at 768.

[97]   *Id.*

[98]   Ex. P6, Progressive claim notes, p. 7.

[99]   *Hansen v. Auto Owners Ins. Co.*, 2000 SD 13, P31, 604 NW2d 504, 513.

the accident, notice is sufficient.[100]

In this case, Travelers' can't show a defect in notice, let alone prejudice. Yet, Travelers argues "insufficient notice of a UIM or Med Pay claim." So Travelers' argument itself creates issues of fact regarding constructive notice and prejudice.

**4.    Travelers claim manual**



---

[100] (Emphasis added) *Hansen*, at P31, 604 NW2d 504, 513.

[101]   Ex. P42, Knowledge Guide, Charter Oak 3028.

[102]   *Id*. at 3031.



\* \* \*

---

[103]  Ex. P42, (Knowledge Guide excerpt) at Charter Oak 3034 (emphasis added) [SEALED].

[104] *Id.* at 3035 (emphasis added).

[105] *Id.* at 3042 (emphasis added).

[106] *Id.* at 3034 (emphasis added).

[107] *Id.* at 3038 (emphasis added).



108 *Id.* at 3048 (emphasis added).

109 *Id.* at 3065 (emphasis added).

110 *Id.* at 3049 (emphasis added).

111 *Id.* at 3034 (emphasis added).

<u>coverage</u>, which applies when another party is responsible for our



While the admissions quoted above are not part of the insurance contract, the

South Dakota Supreme Court has repeatedly held that an insurer's own construction of

its policy "must be considered as very persuasive, especially if it is favorable to the

insured:"[115]

---

[112] *Id.* at 3086 (emphasis added).

[113] *Id.* at 3059 (emphasis added).

[114] *Id.* at 3038 (emphasis added).

[115] *Overfield v. American Underwriters Life Ins. Co.,* 2000 SD 98, P18-19, 614 NW2d 814, 818-819 (S.D. 2000).

**5.**   **Travelers' claim personnel admit that** ███████████████

The South Dakota Supreme Court has often stated, "a party cannot claim benefit of a version of the facts more favorable to his contentions than he gave in his own sworn testimony."[116]



---

[116] *Overfield*, 2000 SD 98, P18-19, 614 NW2d 814, 818-819 (S.D. 2000)



The Billion insurance agent that initially reported this accident to Travelers, Steve Barnes, testified that he specializes in procuring coverage for car dealerships.[118]  He says it's not the insured's job to tell the insurer what coverage to apply, it's the insurer's job:

Q.  <u>Is that the insured's job</u> to call the insurance company and say, "Here's the pol- -- here's the policy provision that you owe us under"?

(Objections omitted)

THE WITNESS:  <u>I would say, no</u>, it's not the insured's part either.

Q.  It's not the insured's job, right?

A.  Fair.

*   *   *

---

[117]  Ex. P12, Hennessey Depo. pp. 17-19.

[118]  Ex. P8, Barnes Depo. P. 38).

Q.   Okay.  The insured's job if -- if there is a loss or an accident or something that could potentially generate a claim, <u>the insured's job is to give the company notice of the accident or the loss</u> or whatever it is that happened, right?

    (Objections omitted)

THE WITNESS:  <u>Yes.</u>

Q.   And whether or not it's -- it's -- the insured doesn't have to call the company and say, "I'm asking for money," do they, in order to make a claim?

A.   I suppose it depends on the type of claim, but typically not.

Q.   Typically <u>all they have to do is call the company and tell them about the loss</u>; that's called a notice of loss, correct?

A.   Correct.

(Objections omitted)

*   *   *

Q.   And it's <u>the insurance company that decides</u> if it's a valid claim or not, correct?

A.   Correct.

Q.   And the insured, as well as you, when you do business with insurance companies, you expect the insurance company to be the experts on what their policy covers, don't you?

(Objections omitted)

THE WITNESS:  Again, knowledge, yes.

Q.   Well, you expect them to have the expertise in order to say what the policy covers and what it doesn't cover, correct?

A.   I would agree with that statement, Mike.

Q.   Yeah.  And, in fact, when an insurance company sells insurance, they're not

29

just selling coverage; they're also selling their services as the experts that determine whether coverage applies and what it -- what it provides; isn't that true?

(Objections omitted)

THE WITNESS:  Again, in my eyes I would say yes.

Q.   I mean, you don't sell any self-service insurance, do you?

A.   No, I do not.[119]

Indeed, Barnes says he has yet to see a situation where Charter Oak or Travelers didn't know what was in its own policy.[120]

Travelers' argument that it's the insured's job to name specific coverage provisions is an imaginary requirement not included in the policy.

### 6.    The Courts reject Travelers' fictitious definition of a "claim."

In *Eide v. Southern Sur. Co.*, the South Dakota Supreme Court rejected an insurer's argument that its insured had provided deficient notice of loss by not adequately describing the coverage under which he sought benefits.[121]  The Court held that "in making proof of loss, appellant [the insured] was not obliged to describe the occurrence in the technical manner of a pleading, to use language of the policy for the purpose of that description, *nor to elect upon which of the clauses in the policy the claim might be*

---

[119]  Ex. , Barnes Depo. pp. 34-37.

[120]  Ex. P8, Barnes Depo. p. 90.

[121]  *Eide v. Southern Sur. Co.*, 226 NW 555, 555-556.  (S.D. 1929).

*made*."[122]

In *St. Paul Fire and Marine Ins. Co. v. Tinney*, the Eleventh Circuit considered the question of "when is a claim made?"  The Court ruled that:

> Once the insurer is put on notice that there has been an incident, together with the essential facts upon which the liability of the insurer depends, *a claim is made*.[123]

Continuing, the Court explained that: "no matter what the form of notice of loss may be, if it operates to bring the attention of the insurer to the loss or accident, sets forth the essential facts upon which liability of the insurer depends, and appears credible, it is sufficient."[124]

In the Kansas decision of *Bartlett v. CNA,* the insurer made the same argument Travelers makes here: that its insured <u>hadn't specifically requested UIM coverage</u>, so the accident notice was insufficient to make *an under-insured motorist claim*.[125]  The Court concluded that: "[t]he [insurer's] argument is unsupported by law, contract, or common sense."[126]

> The notice provisions of the policy *do not require the insured to identify for his or her company the coverage provision which will be applicable* to the

---

[122]  *Id*. at 556. (Emphasis added.)

[123]  *Tinney*, 920 F.2d 861, 862 (11th Cir. 1991)

[124]  *Id*.  Citing 44 Am Jur 2d Ins. §1352 (1982); *Lee v. Prudential Ins. Co.,* 812 F2d 1344 (11th Cir. 1987).  *Hopkins v. Lawyers Title Ins. Corp.,* 514 So.2d 786, 788 (Ala. 1986).

[125]  *Bartlett v. CNA*, 104 P.3d 1011, 1017 (Kan. App. 2005).

[126]  *Id.* at 1017.

claim.

One would expect the insurance company, which drafted the insurance policy, to have a greater knowledge of the applicability of the various coverages contained in the policy than a person who purchases the policy.

*To suggest that the insured has to identify the precise coverage that will apply to an accident is totally unpersuasive. Upon being notified of an accident, it is incumbent on the insurance company to investigate the applicability of its insurance policy provisions.  Transportation's [the insurer's] contentions to the contrary fail as a matter of law.*[127]

The Eighth Circuit itself addressed an insurer's claim of insufficient notice in

*Owatonna Clinic-Mayo Health Sys. v. Medical Protective Co.,* a case decided under

Minnesota law.[128] In *Owatonna*, a physician's insurer argued that it had no duty to

provide coverage or a defense to a lawsuit brought against its insured, since the insured

failed to clearly identify each of the individuals bringing suit as required by the policy

notice provision.[129] The Eighth Circuit agreed the insured's notice didn't comply with the

policy notice provision, but held that: "as long as the 'notice clearly gave an insurer

sufficient information to conclude that the insured had presented a claim for arguable

coverage,' the insurer had a duty to make a reasonable investigation of the situation and

provide coverage if the policy covered the conduct discovered."[130]

---

[127] *Barlett,* 104 P3d 1011, 1017 (Kan. App. 2005) (emphasis added).

[128] *Owatonna Clinic-Mayo Health Sys. v. Medical Protective Co.*, 639 F.3d 806 (8th Cir. 2011).

[129] *Id.* at 812.

[130] *Id.*

32

The same applies here.  Travelers knew Laura was badly injured, it knew her damages exceed the liability coverage of the at fault driver, and it knew that Laura's attorney was trying hard to identify any source of coverage or recovery for her.  As the Eighth Circuit said in *Owatanna*, those facts would "set off alarms" to any reasonable insurer to investigate the underinsured coverage in its own policy. That's all the policy requires to initiate a claim.

### 7.    Travelers committed bad faith.



In *The Travelers Insurance Company v. Buffalo Reinsurance Company*, Travelers admitted an obligation to perform these duties.[134]  Travelers argued in its brief as follows:

> [O]nce Travelers *receives notice of claims that are potentially covered under its policies* – even where the insured may not

---

131    Ex. P41 , Good Faith Claim Handling, p. Charter Oak 9745.

132    *Id.*, p. 9754.

133    *Id.*

134    735 F. Supp. 492, 495 (D.N.Y. 1990).

33

> recognize that coverage is available – *Travelers had an*
> *ethical obligation to advise its insured.*,[135]

The court's published decision echoes Travelers' explanation:

> Although [the insured] believed that these claims were not
> covered under its policies, *Travelers determined that it was*
> *bound by ethical claims-handling practices to apprise its*
> *insured that indemnity coverage may exist.*[136]

In this case, however, Travelers says just the opposite. It says that the insured must

already know that the policy provides coverage, and in fact must know which provisions

to cite for that coverage.  Otherwise, Travelers won't honor that coverage.

Failure to perform an adequate investigation of coverage can support a claim of

bad faith.[137]  Travelers <u>concedes</u> it performed no investigation of Laura's coverage.[138]

Travelers own coverage counsel says if she had known of an injured passenger, a

discussion of the coverage available for that passenger would have been warranted.[139]

These facts alone support a reasonable inference of "faulty investigation."

Moreover, when an insurer fails to reasonably investigate, and the investigation would

---

[135] Ex. P38, Memorandum of the Travelers Insurance Company in Opposition to
Defendants' Motions for Summary Judgment on Late Notice Grounds, pp. 14-15, 44-45.

[136] 735 F. Supp. 492, 495 (D. NY. 1990).

[137] *Dakota, Minn. & E.R.R. Corp. V. Acuity,* 2009 S.D. 69, P23, 771 N.W.2d 623, 630
(S.D. 2009).

[138]  Travelers Brief p. 26 ("the undisputed evidence shows no one presented, discussed or
considered a UIM or UMP claim").

[139]  Ex. P13, Midkiff Depo. pp. 110-111.

have provided insurer with knowledge of a lack of reasonable basis, the insurer should

not be allowed to argue that it isn't liable for bad faith because it lacked knowledge of a

lack of reasonable basis.  Any other result would encourage insurers not to investigate.

### 8.   Imposing notice requirements not found in the policy, and without disclosing them to the insured, is fraud.

The South Dakota Supreme Court held in *Biegler v. American Family Mut. Ins.*

*Co.*, that imposing notice conditions not included in the policy is not only breach of

contract and bad faith, it's also fraud.[140]

In *Biegler*, American Family denied coverage and refused to defend its insured on

the basis that the insured hadn't complied with the Notice of Loss requirements by

providing American Family with "proof of service" for the summons and complaint

served upon the insured. [141]  But American Family did not tell its insured that providing

the proof of service was required, or that American Family would extend coverage once

that occurred.  Later when the insured sued for bad faith, American Family argued that

"without actual service of process or acceptance of the same by Biegler, there was never a

suit to defend." [142]

But, as with Travelers' imaginary notice provision here, the policy in *Biegler*

---

[140] *Biegler v. American Family Mut. Ins. Co.*, 2001 SD 13 (S.D. 2001).

[141] *Id* ., P9.

[142] 2001 SD 13, P16-17; 621 N.W.2d 592, 600.

didn't require the insured to provide "proof of service."[143]  The South Dakota Court not

only declined to impose American Family's non-existent notice requirement, but it also

held that American Family's reliance on an imaginary notice condition – especially

<u>without disclosing it to the insured</u> – constituted *deceit* by omission under SDCL 20-10-

2(3) ("suppression of a fact by one who is bound to disclose it, <u>or</u> who gives information

of other facts which are likely to mislead for want of communication of that fact.") The

Court said American Family "sand-bagged" the insured.[144]  The Court explained as

follows:

> ... How would Biegler know what American Family was thinking
> when American Family did not communicate its thinking to him?

> ... American Family failed to advise Biegler it had a duty to defend
> once Biegler provided it with Schwan's complaint and American
> Family also failed to advise Biegler it did not consider Biegler's
> tender as a proper tender. In sum, American Family tried to
> "sandbag" Biegler by not conveying important information to
> Biegler. ...  *American Family's actions clearly fall within the*
> *meaning of SDCL 20-10-2(3).*"[145]

The same applies to Travelers' conduct here. Travelers says it didn't investigate

coverage for Laura Dziadek because Jeff Cole didn't specifically ask for UIM or Med Pay

coverage.  But how could Cole know – without being told – that Travelers wouldn't

---

[143]  2001 SD 13, P20; 621 N.W.2d 592, 598-99.

[144]  The term "sand-bagged" apparently originated from Vaudeville Theater days, when
heavy bags of sand used to anchor stage curtains and hanging props sometimes fell (or were
dropped) on actors, catching them by surprise and waylaying them.

[145]  2001 SD 13, P34; 621 N.W.2d 592, 602.

investigate any coverage he hadn't both "named and claimed" on her behalf? *Cole didn't even have a copy of the policy*! And how could Cole know that when Faith Styles told him "we have reviewed the facts of this loss in conjunction with the policy issued to our insured, and it is our determination that no coverage exists for your client under this policy," she didn't really mean that at all? What she actually meant, according to Travelers, was that "we haven't investigated any coverage for your client because you didn't tell us which of our own policy provisions to consider."

Travelers "sandbagged" Cole by imposing conditions he didn't know about, and then stood back and hoped he didn't figure it out. Meanwhile, Travelers continued to earn interest on Laura's money, while Cole pursued weak claims in a vain effort to obtain some form of compensation for his client.

**9. Imposing undisclosed conditions of coverage is also breach of contract.**

Travelers argues that Plaintiff cannot show any breach of contract by Travelers.[146] Not so. First, by violating duties of good faith, Travelers is liable for both breach of contract as well as bad faith.[147] Second, when Travelers imposed imaginary and undisclosed notice provisions on Laura, it breached the contract. As stated in Williston, *The Law of Contracts*, "[p]revention of performance is a material breach of contract ...

---

[146]  Travelers' Brief at p. 15 et. seq.

[147]  See *In Re Certification of Law from the U.S. Dist. Ct.,*, 399 N.W.2d 320 (S.D. 1987) (Violation of good faith is both tort and breach of contract); *Stene v. State Farm Mutual Auto Ins. Co.,* 583 N.W.2d 399, 403 (S.D. 1998).

Where performance of a condition precedent to a promisor's liability has been prevented by the promisor, an action for damages may be maintained by the promisee without performance."[148]

In *Santos v. Farmers Ins. Exchange*, a Michigan federal district court held that an insurer "will not be permitted to benefit by sitting idly by, knowing of the insured's rights, and watch its insured become prejudiced."[149]  Continuing, the Court noted that "in the context of insurance contracts, the implied covenant of good faith and fair dealing necessarily precludes obstructing the insured's rights under the contract, *which is a breach of the contract itself*." [150]  The court held that "[s]imilarly, the insurer, which is in a vastly superior position than the insured when it comes to the claims handling process, cannot take advantage of its insured's ignorance of his contractual rights."[151]

Discussing the same concept, the New Mexico Supreme Court stated it this way:

> The duty of disclosure is premised on the principle of fundamental fairness, which dictates that an insurer must notify  a known insured of the scope of available insurance coverage <u>and the terms and conditions governing that coverage regardless of whether the insured is a party to the insurance contract or a third-party beneficiary thereof.</u>

*          *          *

---

[148] 13 Samuel Williston and Richard A. Lord, A Treatise on the Law of Contracts, §39:12 (4th ed. 2000).

[149]  735 F. Supp. 492, 495 (D. N.Y. 1990).

[150] *Santos v. Farmers Ins. Exchange*, 2008 U.S. Dist. LEXIS 56626,*20 (D. Mich. 2008) (emphasis added).

[151] *Id.*

Once an insurer has received notice of an occurrence, there is no reason to restrict the obligation to disclose relevant information about the insured's rights and duties. ...  If additional actions by claimants or beneficiaries are necessary, the insurer should be obligated to  provide complete information about the coverages that may provide benefits, what has to be done to initiate a claim for the insurance benefit, the period within which those actions must be done, and all ancillary rights. Anything less fall short of the insurer's contractual obligations.[152]

The California Supreme Court articulates the rule like this:

One important facet of the insurer's obligation [of good faith]... is the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy. In particular, in situations in which an insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's attention relevant information so as to enable the insured to take action to secure rights  afforded by the policy.[153]

When Travelers imposed fake notice conditions, but didn't disclose them to Laura or Jeff Cole, Travelers intentionally interfered with Laura's ability to meet those conditions.  That breaches the contract.

### 10.    The insurer's duties to disclose coverage and conditions of coverage are the same whether the insured is represented by  counsel or not.

Travelers blames Jeff Cole for not solving a series of riddles, and telling Travelers what was in its own policy. Travelers implies that Laura's representation by a lawyer negates its duties to disclose coverage, or even tell the truth. That argument gets nowhere.

---

[152] *Salas v. Mountain States Mut. Cas. Co.*, 202 Pac. 3rd 801, 809 (N.M. 2009) (emphasis added).

[153] *Davis v. Blue Cross of N. California*, 600 P.2d 1060, 1065-66 (Cal. 1979); see also *Sarchett v. Blue Shield of California,* 729 P.2d 267, 276 (Cal. 1987) (emphasis added).

Under South Dakota law, comparative fault or contributory negligence is not a defense to bad faith.[154] In *Isaac v. State Farm Mut. Auto. Co.,* an uninsured driver struck State Farm's insured from behind.[155] State Farm failed to disclose uninsured motorist coverage.[156] When the insured eventually discovered the coverage and sued for bad faith, State Farm argued that negligence of the insured's attorney caused the insured's damages. But the South Dakota Supreme Court rejected that argument, holding that contributory negligence or comparative fault is not a defense to bad faith.[157]

In *Walz v. Fireman's Fund*, the insurer again tried to shift the burden to investigate to the insured's attorney, but the South Dakota Supreme Court held that the insurer had the duty to investigate, and could not rely on claimant's counsel to perform that duty – especially when it didn't even tell counsel it wanted the information.[158]

In *Weber v. State Farm Mut. Auto Ins. Co*., an Iowa federal district court addressed facts similar to the facts here.[159] State Farm failed to disclose available UIM coverage to an attorney representing two minor children involved in a car crash.[160] State Farm argued

---

[154] *Isaac v. State Farm Mut. Auto. Co.,* 522 N.W.2d 752 (SD 1994)

[155] *Id. at* 754.

[156] *Id.*

[157] *Id.* At 756-57.

[158] 522 N.W.2d 752 at 759 (SD 1994)

[159] 873 F. Supp. 201 (D. Ia. 1994).

[160] *Id.*

that it had no duty to disclose the coverage to an attorney.[161] The Iowa district court rejected that claim, saying: ...  "an insurer has a duty to disclose policy terms to its insureds." (Citations omitted) "This disclosure obligation is particularly important where the insured's lack of knowledge may result in lost benefits or forfeited rights."[162]

In *Ramirez v. USAA Cas. Ins. Co.*, a California Court of Appeals reached the same conclusion.[163]  *Ramirez*, a 16 year old boy, rode as a passenger on a motorcycle when a third party negligently collided with the cycle causing injury to Ramirez.  USAA insured the owner and driver of the motorcycle. Ramirez's attorney contacted USAA but the insurer told him that the policy provided no coverage for his client. The attorney didn't realize UIM coverage existed. Two years later Ramirez became aware of the coverage, but when he asked for benefits, USAA denied the claim as untimely. Ramirez sued for bad faith. USAA argued that since Ramirez had an attorney, USAA's duty to explain the coverage didn't apply. The court rejected that argument, holding that "[i]t is basic that an insurer has a duty to disclose policy terms to its insureds,"[164] and while Ramirez had an attorney representing him, the court stated that "we do not perceive how USAA's duty has been changed."[165]

---

[161] *Id*. at 205-209.

[162] *Id. at 206.*

[163]  285 Cal. Rptr. 757, 760-762 (Cal. App. 1991).

[164] *Id*. at 400.

[165] *Id.* at 400.

The *Ramirez* court also rejected all of the other defenses now raised by Travelers here. The court rejected USAA's argument that Ramirez had no UIM claim until he exhausted his claims against all potentially liable third parties.[166] The court said that the exhaustion requirement made it even more important that USAA disclose the both the coverage and the conditions necessary to trigger that coverage:

> An insurer is not entitled to delay disclosure of policy existence and terms of underinsurance on the ground the insured must first resolve any actions against third  parties. In reality, the need for disclosure at an early date is more urgent in this situation so as to enable an injured insured to make meaningful decisions on how to conduct litigation and to refrain from useless lawsuits against persons with no liability with the delay and expense attendant upon such suits.[167]

The court also rejected USAA's argument that Ramirez couldn't sue for bad faith because he didn't buy the policy or pay premiums, noting that Ramirez qualified as an "insured," and USAA had the same duties to "insureds" regardless of whether they bought the policy.[168]

## 11.   Travelers' "exhaustion of third party claims" argument misses the point.

Travelers wrongly says Laura's claims weren't payable until February, 2012, because only then had Laura perfected her claims by resolving all actions against third

---

[166] *Id.*

[167] *Id.*

[168] *Id.* at 400.

parties.[169]   Travelers' argument is another red herring.

Travelers' collapses because Travelers itself prevented Jeff Cole from producing those records by concealing the potential coverage.  Under the contract doctrine of prevention, Travelers waived the condition precedent by not telling Cole about it.[170]

### 12.   The policy doesn't require conclusion of claims against all possible third parties before UIM benefits are owing.

Laura didn't need to sue each and every possible non-motorist before Travelers owed Laura the duty to investigate and disclose all potential coverages.

First, if Travelers had told the truth about coverage in 2009, Laura would not have initiated claims against the State of South Dakota and its contractors in the first place. And not even Travelers says that Laura would have been obliged to seek out non-motorists to sue if she didn't want to.

Second, resolving lawsuits against non-motorists is not a condition precedent to payment of UIM benefits.  In fact, the UIM endorsement specifically provides subrogation rights to Travelers in the event some non-motorist is later found responsible and provides compensation.[171]   Indeed, the policy doesn't mention notice of lawsuits

---

[169]   Traveler's Brief, pp. 25-26.

[170]   *Weitzel v. Sioux Valley Heart Partners,* 2006 S.D. 45, ¶¶ 35-40 (S.D. 2006).  See also *Johnson v. Coss,* 2003 S.D. 86, ¶¶ 10-16 (S.D. 2003).

[171]   Travelers Exhibit A(1) - (2), Billion Policy p. 36.

against anyone other than the underinsured driver.[172]

Travelers certainly can't require an insured to sue everyone in the world before it honors its contractual promises. If that were the case, there would be no purpose in allowing Travelers subrogation rights in the event of a recovery against a third party.

### 13.    Travelers' conduct caused delay.

Had Jeff Cole known the truth, he could have easily submitted the lions share of medical records and bills to Travelers within a matter of weeks.  That would take care of Travelers' present argument that "we didn't have the bills so we couldn't pay medical expense coverage."  Moreover, Cole could have quickly dealt with Progressive's $100,000 tender on February 24, 2009, by simply asking Travelers whether it wanted to substitute its draft, or consent to release of Lori Peterson.  Then Cole could have provided Travelers with whatever it wanted or needed to settle its UIM responsibilities.  It would never have taken nearly 3 years to even begin receiving UIM benefits.

### 14.    The delay caused Laura significant damages.

Laura's damages from the delay include:

•    Losing the use of Progressive's $100,000 tender and the benefits of beginning to resolve bills and subrogation obligations.

•    Attorney's fees and litigation expense saved as a result of receiving the $905,000 promptly and without requiring time wasting litigation efforts.[173]

---

[172]  *Id.* UIM endorsement §A(3).

[173]  Ex. P46, Cole Affidavit, ¶14.

That alone could have saved over $200,000 in attorney's fees.[174]

- Interest on the claim payment of $905,000 for a minimum of 2 years' delay. See SDCL §§21-2-2, 54-3-4, and 54-3-16.

- Physical and mental strain Laura suffered in 2009-2012 because she didn't have money to pay for certain necessary medications that weren't accident related and compensable through the workers' compensation statutes.[175]

- Financial and emotional strain Laura suffered in 2009-2012 and the need to sell property in order to cover payments and other financial obligations, including difficulty paying her health insurance premiums after losing her job.[176]

Travelers' motion is nonsensical. It hinges on the Court finding that no reasonable person could ever find that Laura suffered any harm by being deprived of $905,000 for over 2 years.

### 15.   Laura is entitled to damages for emotional stress.

Laura is entitled to emotional distress damages on her tort claim for bad faith. Travelers relies on Judge Kornman's discussion of contract damages in *Paulsen v. Ability Ins.*.[177] But contract damages and tort damages are different. Compare SDCL §21-2-1 with SDCL §21-3-1.

For tort damages, the South Dakota Supreme Court holds that emotional distress

---

[174] *Id.*

[175] Ex. P11, Dziadek Depo., pp. 97-100.

[176] *Id.*

[177] 906 F.Supp.2d 909 (D.S.D. 2012). Cited at Travelers' Brief, pp. 30-33.

damages are recoverable in connection with an intentional tort, with no need to prove the

enhanced requirements of intentional infliction of emotional distress.  In *Fix v. First State*

*Bank*, the South Dakota Court wrote:

> We have consistently recognized emotional distress damages in tort actions. ... so
> abuse of process claim is an intentional tort, a plaintiff can seek damages in the
> form of emotional distress without proving the independent tort of intentional
> infliction of emotional distress and without proving the heightened standard of
> "extreme and disabling" emotional distress. ...[178]

Travelers ignores *Fix* and instead cites Judge Kornman's discussion of *contract*

*damages*.  *Paulsen* didn't even cite *Fix*, because *Paulsen* didn't address emotional distress

as part of tort damages.  Under *Fix,* Laura may recover for emotional distress as

compensatory damages for the intentional tort of bad faith.  Travelers' effort to impose an

artificially heightened standard fails as a matter of law.

**16.    Travelers' actions support a reasonable inference of presumed malice.**

Despite all of Travelers' protestations, the South Dakota Supreme Court has held

repeatedly that presumed malice will support a claim for punitive damages.[179]  A claim for

presumed malice can be shown by demonstrating a disregard for the rights of other.[180]

Moreover, the South Dakota court also held in *Isaac v. State Farm*, that acting in

---

[178]  2011 S.D. 80, ¶¶14-16 (emphasis added).

[179]  *Flockhart v. Wyant*, 467 N.W.2d 473 at 475 (S.D. 1991); *Bigler v. American Family Mut. Ins. Co.,* 2001 S.D. 13 at ¶45 (S.D. 2001).

[180]  *Id.*

"reckless disregard" of the insured's rights will support punitive damages.[181]

In *Bigler*, the South Dakota court held that evidence supporting deceit also suffices to show entitlement to punitive damages. The Court said "[t]his alone is a sufficient basis upon which the jury's award of punitive damages is justified."[182]

Another action that the Court holds will support a finding of "reckless disregard" is an insurers' conditioning an offer to pay benefits on release of bad faith claims.[183] That alone suffices to support a claim for punitive damages.[184]

The same applies here. Travelers knew Laura had very serious injuries, couldn't pursue her normal work as a registered nurse, and couldn't even talk without difficulty. A reasonable jury could draw reasonable inferences that Travelers knew withholding $905,000, and delaying collection of another $100,000, would probably exacerbate her financial and emotional strain. Being deprived of over $1 million dollars for a period of over 2 years would certainly affect most people's stress levels, even without the horrendous injuries Laura faced. It also increased the expenses of eventually forcing Travelers to pay – a recognized element of recoverable damages in a bad faith action.[185]

---

[181] 522 N.W.2d 752, 762 (S.D. 1994).

[182] *Bigler*, at ¶46.

[183] *Id.*

[184] *Id.*

[185] *See Hurley v. State Farm Mut. Auto Ins. Co.,* 2012 U.S. Dist. LEXIS 17118, *13 (D.S.D. 2012) (attorneys fees expended in commencing a breach of contract action are recoverable in a claim for bad faith).

**17.     Other Matters.**

Travelers challenges Plaintiffs action for declaratory relief and Unfair Trade Practices Act Claim.

First, Travelers has now admitted Plaintiff's entitlement to relief sought by Plaintiff's Declaratory action, and Travelers forced Plaintiff to sue before making that admission.  Travelers' admissions entitle Plaintiff to an order recognizing and granting the relief sought.  The matter is not "moot," because Plaintiff still seeks attorney fees pursuant to SDCL §58-12-3 for being forced to sue.  Travelers seeks to avoid that by dismissing the action rather than entering an order recognizing the validity of Plaintiff's action.

Second, Travelers seeks dismissal of the UTPA claim on the basis that SDCL §58-33-67 provides no private right of action.  Plaintiff agrees, but Plaintiff's proof also establishes a violation of SDCL §58-33-5 (misrepresentation of insurance benefits).  And under SDCL §58-33-49.1, there is plainly a private right of action for violations of SDCL §58-33-5.  Plaintiff asks to Amend the Complaint to conform to the proof, alleging a violation of SDCL §58-33-5.

Plaintiff asks that Travelers' Motion for Summary Judgment be denied.

Dated May 18, 2015.

By: /s/ Mike Abourezk

Mike Abourezk
Daniel Holloway
ABOUREZK LAW FIRM
2020 West Omaha Street
P.O. Box 9460
Rapid City, SD 57709-9460
(605) 342-0097
mike@abourezk.com
dan@abourezk.com

Certificate of Compliance

This brief complies with the type/volume limitation.  It contains 11,785 words, exclusive of the table of contents, this certificate of compliance and certificate of service.

Dated May 18, 2015.

/s/ Mike Abourezk
Mike Abourezk

49

Certificate of Service

On May 18, 2015, a true and correct copy of this document was served on the following person(s) by ECF filing with the Clerk of the Federal Court:

Timothy A. Clausen
Mayfair Center, Upper Level
4280 Sergeant Road, Suite 290,
Sioux City, IA 51106;

and

Michael R. Cashman
Zelle, Hofmann, Voelbel & Mason, LLP
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415.

/s/ Mike Abourezk
Mike Abourezk
Daniel Holloway
ABOUREZK LAW FIRM
2020 West Omaha Street
P.O. Box 9460
Rapid City, SD 57709-9460
(605) 342-0097
mike@abourezk.com
dan@abourezk.com