UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



| | |
|---|---|
| LAURA DZIADEK,<br><br>Plaintiff,<br><br>vs.<br><br>THE CHARTER OAK FIRE INSURANCE COMPANY, d/b/a TRAVELERS,<br><br>Defendant. | 4:11-CV-04134-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiff, Laura Dziadek ("Dziadek"), sued Defendant Charter Oak Fire Insurance Company, doing business as Travelers ("Charter Oak"), making claims sounding in contract and tort relating to a commercial insurance policy issued by Charter Oak. Doc. 15. Dziadek's Amended Complaint asserts that she is entitled to declaratory judgments that she is an insured under the underinsured ("UIM") endorsement with Charter Oak owing her a duty of good faith and fair dealing, that $1,000,000 of UIM coverage exists, and that she is an insured under the medical payments endorsement. Doc. 15 at ¶¶ 15–51. Dziadek further alleges Charter Oak breached the insurance contract and engaged in unfair trade practices, fraud and deceit, and bad faith in its dealings with Dziadek. Doc. 15 at ¶¶ 52–95. After the lawsuit was filed, Charter Oak acknowledged coverage, paid $900,000 under the UIM coverage,[1] paid its $5,000 medical

---

[1]Charter Oak under South Dakota law was entitled to an offset from the $1,000,000 UIM limits for the $100,000 received from Progressive Insurance Company, the tortfeasor's insurer. <u>See</u>

payments coverage limit, and now has filed a Motion for Summary Judgment.  Doc. 118.

Charter Oak argues that because policy limits were paid, the declaratory relief claims should be

dismissed as moot, and the breach of contract claim should be dismissed for lack of any

damages.  Doc. 133 at 1–2.  Charter Oak also moves for summary judgment on Dziadek's unfair

trade practices, bad faith, fraud and deceit, punitive damages, and attorney's fees claims, by

arguing that because Dziadek cannot prove a breach of contract, she has no right to seek such

extra-contractual relief.  Doc. 133 at 2.  Finally, Charter Oak contends that even if claims for

extra-contractual relief could be maintained, those claims fail as a matter of law under the facts

of this case.  Doc. 133 at 2.  Dziadek opposes Charter Oak's Motion for Summary Judgment.

Docs. 122, 125.  For the reasons explained below, Charter Oak's Motion for Summary Judgment

is granted on the unfair trade practices claim only and is otherwise denied.

## II. FACTUAL BACKGROUND

Charter Oak issued a Commercial Insurance Policy ("the Policy") to Billion Empire

Motors, Inc. ("Billion"), an auto dealership in Sioux Falls, South Dakota, for the period of July 1,

2008 to July 1, 2009.  Doc. 119-1 at 1–2.  The Policy included UIM and medical payments

coverage.  Doc. 119-2 at 10–17.  Billion lent one of its vehicles to a customer, Lori Peterson

("Peterson"), while her vehicle was in for repairs.  Doc. 132 at ¶ 18; Doc. 123 at 11.  On

September 22, 2008, while returning from the Black Hills, Peterson lost control of the Billion

vehicle in or near a construction zone on Interstate 90 in South Dakota, causing the vehicle to

crash in a ravine.  Doc. 120-27 at 9–10.  Dziadek was a passenger in the Billion vehicle driven

by Peterson and was badly injured.  Doc. 132 at ¶¶ 21–22; Doc. 123 at 12.  Dziadek hired Jeffrey

---

S.D. Codified Laws ("SDCL") § 58–11–9.5; Kirchoff v. Am. Cas. Co., 997 F.2d 401, 402 n.2
(8th Cir. 1993).

A. Cole ("Cole") of Zimmer, Duncan, and Cole in December 2008 to represent her in matters stemming from that motor vehicle accident. Doc. 132 at ¶ 37; Doc. 123 at 17–18.

The Policy contained a provision titled, "Duties In The Event Of Accident, Claim, Suit Or Loss," which required the named insured, Billion, to provide notice of accident or loss. Doc. 119-1 at 37. Charter Oak received notice of the accident from Billion's insurance agent on January 29, 2009, and on that same day, Faith Styles ("Styles"), Charter Oak's claims representative, began to investigate. Doc. 132 at ¶¶ 26–27; Doc. 123 at 13; Doc. 135 at ¶ 4. Styles learned that Peterson was the driver in a single car accident and that Peterson may have fallen asleep to cause the accident. Doc. 132 at ¶ 28; Doc. 123 at 14; Doc. 124-2 at 3. She also learned that Dziadek was a passenger in the car at the time of the accident, that both Peterson and Dziadek were injured as a result of the accident, and that Peterson was insured under a Progressive Insurance Company ("Progressive") policy. Doc. 132 at ¶ 28; Doc. 123 at 14; Doc. 124-2 at 3. Styles contacted a Progressive adjuster and learned that Peterson had a $100,000 liability coverage limit under the Progressive policy, that Dziadek was a nurse, and that Dziadek's medical bills already had exceeded $100,000. Doc. 124-2 at 3. Shortly thereafter, on February 2, 2009, Styles received information about Dziadek's injuries from Dziadek's sister, Mae Schafer ("Schafer").[2] Doc. 124-2 at 5.

On February 6, 2009, after an exchange of voice messages in the days prior, Styles spoke with Cole. Doc. 124-2 at 5–6. Cole recalls that he asked Styles about coverage for Peterson and Dziadek and that Styles said there was no coverage under Charter Oak's Policy for either. Doc. 124-10 at 123–24, 130–31. Styles, however, recalls only being asked about liability coverage for Peterson and not about coverage for Dziadek. Doc. 135 at ¶ 18.

---

[2] As a result of injuries from the accident, Dziadek's vocal cords were partially paralyzed. Doc. 124-2 at 5. Dziadek's sister, Schafer, communicated with Styles on Dziadek's behalf.

On February 12, 2009, Styles consulted with Unit Manager, Tim Westbrook ("Westbrook")—a UIM and uninsured motorist specialist—and with in-house coverage counsel Dawn Midkiff ("Midkiff") about whether Peterson was an insured under the Policy. Doc. 124-35 at 2–3; Doc. 132 at ¶ 48; Doc. 126 at 23. These three Charter Oak representatives determined that the Policy did not provide liability coverage for Peterson. Doc. 132 at ¶ 50; Doc. 126 at 24–26; Doc. 135 at ¶ 22. Midkiff testified that neither Styles nor Westbrook mentioned that there was an injured passenger during that meeting. Doc. 124-13 at 67, 109–11.

On the same day, February 12, 2009, and after the meeting, Styles wrote a letter to Cole regarding "YOUR CLIENT: Laura Dziadek." Doc. 124-19 at 2. The letter stated:

> We have reviewed the facts of this loss in conjunction with the policy issued to our insured and it is our determination that no coverage for your client exists under this policy.  Under the terms of the policy, Lori Peterson's liability coverage would be primary.  If she did not have insurance or if the limits of her policy were less than the minimum required limits for South Dakota, then she would qualify as an insured under our insured's policyat [sic] amount is $25,000.  It is my understanding that Ms. Peterson had a liability limit of $100,000 so she would not qualify as an insured under this policy.

Doc. 124-19 at 2.

Cole replied to Styles by letter dated February 18, 2009, and requested "a copy of the Declaration Sheet of the Billion Empire Motors, Inc. insurance policy . . . and a true and correct copy of the insurance policy." Doc. 120-12 at 2.  Over two weeks later, on March 5, 2009, Styles sent Cole the declaration sheet and excerpts of the Policy used to determine that Peterson lacked liability coverage, but none of the provisions on UIM or medical payments coverage. See Doc. 120-13.  Styles claims that she understood Cole's request to be one for information she had relied upon, so she sent the same policy provisions she had previously sent to Progressive. Doc. 135 at ¶ 28.  The declaration sheet indicated that there was $1,000,000 UIM and $5,000 medical payments coverage, Doc. 120-13 at 11, but Cole assumed Styles' statement in the February 12,

2009 letter—"it is our determination that no coverage for your client exists under this policy"—applied to all coverage provisions, Doc. 124-46 at ¶¶ 4–5; Doc. 124-19 at 2. Meanwhile, on February 24, 2009, Progressive offered its $100,000 liability limits to Dziadek in exchange for a full release. Doc. 124-21. Cole declined the offer because Dziadek's medical bills already had exceeded $100,000 and because she was receiving workers' compensation benefits and hopeful to collect more from Peterson, other alleged tortfeasors, or through insurance. Doc. 124-46 at ¶ 8.

On September 22, 2009, exactly one year after the accident, Dziadek sued Peterson. Doc. 1. About one year later, on September 17, 2010, Cole and another attorney in Cole's office, Daniel Brendtro ("Brendtro"), filed a second lawsuit on Dziadek's behalf against the State of South Dakota Department of Transportation, various state officials, a road contractor, and a signage company ("DOT case"), alleging that the configuration and maintenance of the Interstate 90 construction zone caused or contributed to the motor vehicle accident. Doc. 132 at ¶ 81; Doc. 126 at 51–52; Doc. 128-46. However, by June or July of 2011, both Cole and Brendtro had determined that Dziadek was unlikely to recover anything substantial in the DOT case. Doc. 132 at ¶ 83; Doc. 126 at 52.

Also in June or July of 2011, Brendtro reviewed Dziadek's file in an effort to determine if any further coverage was available. Doc. 132 at ¶¶ 84–85; Doc. 126 at 52–53. Brendtro observed that the Policy issued by Charter Oak to Billion included UIM coverage and directed paralegal Jennifer Doubledee ("Doubledee") to request from Charter Oak a copy of the entire Policy. Doc. 132 at ¶¶ 85–86; Doc. 126 at 53; Doc. 124-9 at 155–56. Doubledee called Styles and requested the entire Policy, but Styles required Doubledee to request specific parts. Doc. 124-9 at 157. Doubledee, on July 15, 2011, then narrowed her request to Styles to the Policy's

UIM and uninsured motorist provisions. Doc. 132 at ¶ 86; Doc. 126 at 53; Doc. 124-9 at 157; Doc. 128-10 at 2. Styles, however, did not immediately send the requested policy provisions. See Doc. 124-24 at 2. After Doubledee repeated her request on July 21, 2011, Styles provided the UIM and uninsured motorist policy language to Cole and Brendtro's firm on July 22, 2011. Doc. 124-24 at 2, 157; Doc. 132 at ¶ 88; Doc. 126 at 54.

Brendtro reviewed the UIM policy language and on July 28, 2011, sent a letter to Styles seeking to confirm that Dziadek had UIM coverage under the Policy. Doc. 124-25 at 2–5. Charter Oak received Brendtro's letter on August 1, 2011, but did not respond. Doc. 124-25 at 2; Doc. 132 at ¶ 98; Doc. 126 at 59. Dziadek filed this lawsuit on September 20, 2011. Doc. 1. Charter Oak's answer admitted the existence of UIM and medical payments coverage for Dziadek, although it denied other claims and matters. Doc. 8.

Cole ultimately demanded on January 17, 2011, that Charter Oak pay both the UIM and medical payments limits. Doc. 128-21 at 2. Cole then requested assent from Charter Oak to settle Dziadek's claim against Peterson and Progressive for the $100,000 liability limit on February 3, 2012. Doc. 128-23 at 2. Charter Oak, on February 16, 2012, consented to that settlement and also consented to Dziadek's dismissal of the DOT case. Doc. 128-24 at 3. On February 21, 2012, Charter Oak sent two checks totaling $905,000 to pay the UIM and medical payments coverage claims of Dziadek.[3] Doc. 128-25 at 2–5.

---

[3]"Underinsured motorist coverage allows the insured to 'collect the amount of that insured's own coverage less the amount of the tortfeasor's liability coverage'" under South Dakota law. Kirchoff, 997 F.2d at 402 n.2 (quotation omitted); SDCL § 58–11–9.5. Thus, Charter Oak paid its $1,000,000 coverage limits less the tortfeasor's coverage limits of $100,000, for a total payment of $900,000, plus the separate $5,000 for the medical payments coverage limits.

6

## III. DISCUSSION

South Dakota substantive law applies in this diversity jurisdiction case.  Hammonds v. Hartford Fire Ins. Co., 501 F.3d 991, 996 n.6 (8th Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)); Doc. 15 at ¶ 4.

### A. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Rule 56 places the burden initially on the moving party to clearly establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Once the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distribution, Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012).  On summary judgment, courts view the evidence "and reasonable inferences in the light most favorable to the nonmoving party."  Ferguson v. Cape Girardeau Cty., 88 F.3d 647, 650 (8th Cir. 1996).

### B. DECLARATORY JUDGMENT CLAIMS

Dziadek asserts that she is entitled to declarations that she is an insured under the UIM coverage and thus, that Charter Oak owes her a duty of good faith and fair dealing (Count 1), that

$1,000,000 of UIM coverage exists (Count 2), and that she is an insured under the medical payments coverage (Count 3). Doc. 15 at ¶¶ 15–51. Charter Oak counters that because Charter Oak paid both UIM and medical payments benefits owed, the declaratory requests should be dismissed as moot. Doc. 133 at 14–15.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Already, L.L.C. v. Nike, Inc., 133 S. Ct. 721, 726–27 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982) (per curiam)). Charter Oak admitted the key paragraphs of Counts 1, 2, and 3 setting forth the declaratory judgments sought by Dziadek. Doc. 1 at ¶¶ 24, 36, 51; Doc. 8 at ¶¶ 24, 36, 51; Doc. 15 at ¶¶ 24, 36, 51; Doc. 16 at ¶¶ 24, 36, 51. With regard to Count 1, Charter Oak admitted:

> Laura Dziadek, therefore, is an "insured" under the Underinsured Endorsement because she was occupying a covered auto at the time she received her injuries; as an "insured", [Charter Oak] owes her an implied covenant of good faith and fair dealing; and [Dziadek] seeks a declaration of these rights and status under 28 U.S.C. § 2201(a).

Doc. 1 at ¶ 24; Doc. 8 at ¶ 24; Doc. 15 at ¶ 24; Doc. 16 at ¶ 24. Concerning Count 2, Charter Oak admitted:

> [Dziadek], therefore, is entitled to up to $1,000,000 of coverage under the Underinsured Endorsement, subject to any valid limits of insurance identified in the Endorsement, and she seeks a declaration of these rights and status under 28 U.S.C. § 2201(a).

Doc. 1 at ¶ 36; Doc. 8 at ¶ 36; Doc. 15 at ¶ 36; Doc. 16 at ¶ 36. And regarding Count 3, Charter Oak admitted:

> Laura Dziadek, therefore, is an "insured" under the Auto Medical Payments Coverage because she was occupying a covered auto at the time she received her injuries; and she seeks a declaration of this right under 28 U.S.C. § 2201(a).

8

Doc. 1 at ¶ 51; Doc. 8 at ¶ 51 Doc. 15 at ¶ 51; Doc. 16 at ¶ 51. However, Charter Oak did not make these admissions of coverage until after being sued and indeed appeared to ignore a written request from Dziadek's counsel sent approximately fifty days before the filing of the Complaint seeking to confirm coverage for Dziadek under portions of the Policy.

At this point in the litigation where Charter Oak has admitted coverage and paid Dziadek monies under the Policy, there appears to be little "live" controversy surrounding Counts 1, 2, and 3. However, declaratory judgment counts can be utilized as "predicate[s] to further relief." Powell v. McCormack, 395 U.S. 486, 499 (1969). Entry of declaratory judgments on Counts 1, 2, and 3 may have a nexus to other claims made by Dziadek. Those monetary claims remain unresolved and highly contested by clearly adverse parties, and thus the declarations sought in Counts 1, 2, and 3 may not be altogether moot. See id.

Charter Oak's admissions of coverage and concomitant lack of genuinely disputed facts on Counts 1, 2, and 3 appear to entitle Dziadek—and not Charter Oak—to summary judgment on these counts. However, Dziadek has filed no such motion. If these were the only three counts in the case, this Court would look to enter summary judgment for Dziadek, and Dziadek could recover taxable costs at least through the point of Charter Oak's admission in its Answer. Because Dziadek is not seeking summary judgment and with the possibility that entry of declaratory judgments could at a minimum affect taxation of certain costs and potentially other claims, Charter Oak's motion for summary judgment on Counts 1, 2, and 3 is denied.

### C. UNFAIR TRADE PRACTICES CLAIM

Dziadek, in Count 4 of the Amended Complaint, alleges that Charter Oak violated SDCL § 58–33–67(1) and (3), provisions of the South Dakota Unfair Trade Practices Act, by failing to adopt and adhere to reasonable standards for the prompt investigation of claims, failing to

acknowledge and act upon Dziadek's claim within thirty days, and failing to promptly provide a reasonable explanation of the basis for denial of coverage. Doc. 15 at ¶¶ 74–75. "SDCL 58–33–67 does not create a private right of action." Anderson v. W. Nat'l Mut. Ins. Co., 857 F. Supp. 2d 896, 908 (D.S.D. 2012); see SDCL § 58–33–69 ("Nothing in §§ 58–33–66 to 58–33–69, inclusive, grants a private right of action."); SDCL § 58–33–68 (providing that the South Dakota "Division of Insurance, in interpreting and enforcing §§ 58–33–66 and 58–33–67, shall . . . determine the severity and appropriateness of action to be taken in regard to any violation of §§ 58–33–66 to 58–33–69, inclusive."). Dziadek in briefing acknowledged that she has no private right of action under SDCL § 58–33–67. Doc. 125 at 48. Thus, summary judgment is proper for Charter Oak on that claim.

Dziadek, recognizing the shortcoming in her unfair trade practices claim, asked in briefing for leave to amend her Amended Complaint to allege a violation of SDCL § 58–33–5 (dealing with misrepresentation of policy terms or benefits) instead of a violation of SDCL § 58–33–67. Doc. 125 at 48. Charter Oak opposed the request. Doc. 129 at 33. Dziadek has not filed a motion to amend complaint to assert a claim under SDCL § 58–33–5. At this time, Dziadek may amend her complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Ordinarily, a request for leave to amend is to be freely granted. Id.; Clayton v. White Hall Sch. Dist., 778 F.2d 457, 460 (8th Cir. 1985). However, a casual request in briefing to amend a complaint without any separate motion is not how to obtain leave of court to amend a pleading. See Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Moreover, this Court's Civil Local Rules require a party moving to amend a pleading to attach the proposed amended pleading to its motion. D.S.D. Civ. LR 15.1. The Eighth Circuit has upheld such a requirement. Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880

(8th Cir. 2015).  Dziadek did not submit to this Court a separate motion or proposed second amended complaint, and a casual request in briefing to amend need not be granted.  See Clayton, 778 F.2d at 460 (affirming denial of amendment where request was made in response to a motion to dismiss and neither a motion nor a proposed amendment was filed with the court).

Additionally, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497–98 (8th Cir. 2008) (citing Fed. R. Civ. P. 16(b)).  The deadline to amend pleadings has long passed and has not been enlarged in any of the many amended scheduling orders.  Docs. 11, 15, 32, 36, 56, 81, 101.  Dziadek's brief was filed well after the deadline to amend pleadings and cause has not been shown as to why a modification to the expired deadline to amend pleadings is warranted.  Popoalii, 512 F.3d at 497–98.

Of course, "[a] district court may refuse to grant leave to amend if the plaintiff had an earlier opportunity to cure a defect in her complaint but failed to do so." Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 620 (8th Cir. 1995).  Dziadek makes no argument of being unaware of the prohibition on a private right of action in SDCL § 58–33–67, or of SDCL § 58-33-5.  See Egerdahl, 72 F.3d at 620 (affirming denial of request to amend already amended complaint because plaintiff demonstrated knowledge of facts and law underlying requested change in an earlier motion and lacked due diligence).  Therefore, this Court will not accommodate the request in Dziadek's brief for leave to amend her amended complaint.

### D.  BREACH OF CONTRACT CLAIM

Count 6 of Dziadek's Amended Complaint alleges a breach of contract claim.  The elements for breach of contract under South Dakota law are "(1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages." Bowes Constr., Inc. v. S.D. DOT, 2010 SD

99, ¶ 21, 793 N.W.2d 36, 43. Charter Oak's Policy is the enforceable promise or contract at issue. However, Charter Oak argues that it did not breach the contract and that Dziadek has no breach-of-contract damages. Doc. 133 at 21–25.

Charter Oak argues that it performed the contract by focusing on its conduct after this lawsuit commenced. Charter Oak notes that UIM is excess insurance to underlying liability coverage, that Dziadek through Cole only made a demand for the UIM payment and sought consent to accept Progressive's underlying limit in early 2012, and that in February of 2012 Charter Oak paid the applicable limits of UIM and medical payments coverage. Doc. 133 at 21–24. In short, Charter Oak argues that there existed a condition precedent to its contractual duty to make a UIM payment; that is, Dziadek had to notify Charter Oak of her intention to accept the underlying liability limits, allow Charter Oak an opportunity to exercise its Schmidt/Clothier[4] rights, and make a formal demand for UIM benefits. Charter Oak's argument has some legal merit and superficial appeal to it, but only by overlooking its failure to extend medical payments benefits to Dziadek in 2009 and the factual dispute about why the condition precedent to UIM payment did not occur until 2012.

Under South Dakota law, a contract may be unenforceable when it contains a condition precedent that fails to occur and may be unenforceable until the condition precedent occurs. See Weitzel v. Sioux Valley Heart Partners, 2006 SD 45, ¶ 39, 714 N.W.2d 884, 896; see also Johnson v. Cross, 2003 SD 86, ¶ 13, 667 N.W.2d 701, 705–06 ("A condition precedent is a contract term distinguishable from a normal contractual promise in that it does not create a right or duty, but instead is a limitation on the contractual obligations of the parties."). However, the prevention doctrine is an exception to the requirement of a condition precedent to contract

---

[4]South Dakota has adopted the Schmidt/Clothier notice procedure. See Anderson, 857 F. Supp. 2d at 899 n.6; Helmbolt v. LeMars Mut. Ins. Co., 404 N.W.2d 55, 59–60 (S.D. 1987).

performance. Weitzel, ¶ 39, 714 N.W.2d at 896.  The South Dakota Supreme Court adopted the prevention doctrine as stated in the Restatement (Second) of Contracts:

> Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him . . . may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence. . . . [N]on-performance of that duty when performance is due is a breach. . . . [I]t has the further effect of excusing the non-occurrence of the condition itself, so that performance of the duty that was originally subject to its occurrence can become due in spite of its non-occurrence.

Johnson, ¶ 13, 667 N.W.2d at 706 (alterations in original) (quoting Restatement (Second) Contracts § 245 cmt. (a)).  Stated another way, "if a party to a contract hinders the occurrence of a condition precedent, that condition is waived." Id. ¶ 16, 667 N.W.2d at 706.  This doctrine "requires that the conduct have 'contributed materially' to the non-occurrence of the condition." Id. ¶ 15, 667 N.W.2d at 706 (quotation omitted).  Application of the prevention doctrine is a question of fact reserved for the jury. Id.

Dziadek has presented evidence that she and her counsel relied on Charter Oak's letter of February 12, 2009, advising that Dziadek had no coverage under the Policy.  Viewing the facts in the light most favorable to Dziadek, Charter Oak's misleading statement in the letter reasonably could be found to have prevented Dziadek from making a claim at least until Charter Oak in later 2011 sent the UIM policy language to Dziadek's counsel. See Berry v. Time Ins. Co., 798 F. Supp. 2d 1015, 1020 (D.S.D. 2011) (denying motion to dismiss on contract claim because prevention doctrine may excuse condition precedent where insured did not negotiate as required by the policy, initially provided inconsistent information to insured, and later imposed nonexistent and heighted restrictions).  Thus, there is a question of fact on whether Charter Oak breached the Policy through its actions in 2009.

Charter Oak also argues that Dziadek has no breach-of-contract damages because Charter Oak has paid the contract amounts. SDCL § 21–2–1 provides that if a party breaches a contract obligation, the measure of damages is the amount "which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin." When the alleged breach is an obligation to pay money, SDCL § 21–2–2 provides that the aggrieved party's detriment is "the amount due by the terms of the obligation with interest thereon."

At the time this case was commenced, Charter Oak had not paid Dziadek any amount under either the UIM or the medical payments endorsements. After the lawsuit started, Charter Oak in early 2012 paid Dziadek $905,000, which was the full amount owed under both coverages, but without interest.[5] Dziadek argues that Charter Oak has not paid in full because Charter Oak has not paid interest or other consequential expenses caused by its delay of payment. Although claimed consequential damages are not recoverable under a breach of an obligation to pay money, see SDCL § 21–2–2, Dziadek's claim for prejudgment interest on the contract amounts remains. Perhaps Dziadek opts to pursue interest for the delay in payment as a damage claim under her tort claims and perhaps the parties leave the contract claim to be tried by the Court to streamline jury instructions and to avoid the possibility of duplicative damages and remission of the award. Regardless, a party who has allegedly breached a contract does not entitle itself to summary judgment by paying the contract amount after being sued but

---

[5] SDCL § 58–11–9.5 provides: "Coverage shall be limited to the underinsured motorist coverage limits . . . less the amount paid by the liability insurer of the party recovered against." Charter Oak paid the correct amount for UIM benefits to Dziadek, albeit without interest, and whether interest is owed under a breach of contract theory on the UIM benefits is a question of fact turning on if and when Charter Oak breached the contract for UIM benefits. Interest may be owed separately on the medical payments coverage limits.

withholding interest thereon.  Charter Oak is not entitled to summary judgment on Dziadek's contract claim.

### E.  BAD FAITH CLAIM

Count 5 of the Amended Complaint contains a bad faith claim.  The Supreme Court of South Dakota first recognized a cause of action for first-party bad faith in insurance cases in Champion v. United States Fidelity & Guaranty Co., 399 N.W.2d 320, 323–24 (S.D. 1987).  "An insurer's violation of its duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract."  Stene v. State Farm Mut. Auto. Ins. Co., 1998 SD 95, ¶ 19, 583 N.W.2d 399, 403 (citing Champion, 399 N.W.2d at 322); see also Dakota, Minn. & E. R.R. Corp. v. Acuity, 2009 SD 69, ¶ 18, 771 N.W.2d 623, 629 (quoting Hein v. Acuity, 2007 SD 40, ¶ 10, 731 N.W.2d 231, 235) (alteration in original) (stating that "[f]irst-party bad faith . . . is an intentional tort").  Under South Dakota law, bad-faith liability exists if, first, the insurer had no reasonable basis for denying policy benefits or failed to comply with a duty under the insurance contract; and, second, the insurer knew or recklessly disregarded the fact that it had no reasonable basis upon which to deny policy benefits.  Kirchoff, 997 F.2d at 405; see also Dakota, Minn. & E. R.R. Corp., ¶ 17, 771 N.W.2d at 629 (quoting Walz v. Fireman's Fund Ins. Co., 556 N.W.2d 68, 70 (S.D. 1996)).  "Denial of benefits may be inferred from the insurer's failure to process or pay a claim, and the requisite knowledge (or reckless disregard) on the part of the insurer may be inferred when the insurer has exhibited 'a reckless indifference to facts or to proofs submitted by the insured.'"  Kirchoff, 997 F.2d at 405 (quoting Champion, 399 N.W.2d at 324).

The Supreme Court of South Dakota has expanded bad faith claims to include more than just denials of claims.  Hein, ¶ 13, 731 N.W.2d at 236; see also Anderson, 857 F. Supp. 2d at

15

904. In Dakota, Minnesota & Eastern Railroad Corp., the Supreme Court of South Dakota stated that "[f]irst-party bad faith . . . is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its *processing* or *paying* of policy benefits to its insured." ¶ 18, 771 N.W.2d at 629 (alteration in original) (quoting Hein, ¶ 10, 731 N.W.2d at 235). That is, "bad faith can extend to situations beyond mere denial of policy benefits." Id. (quoting Julson v. Federated Mut. Ins. Co., 1997 SD 43, ¶ 6, 562 N.W.2d 117, 119). "Bad faith conduct may include the failure to conduct a reasonable investigation concerning the claim." Id. ¶ 19, 771 N.W.2d at 629. A bad faith claim in South Dakota may be based on a "failure to comply with a duty under the insurance contract," but still must involve "an insurance company consciously [engaging] in wrongdoing." Id. ¶¶ 17–18, 731 N.W.2d at 629 (quotation omitted).

An insurance company, however, may "challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Id. ¶ 17, 771 N.W.2d at 629 (quoting Walz, ¶ 7, 556 N.W.2d at 70); see also Adam v. Stonebridge Life Ins. Co., 612 F.3d 967, 975 (8th Cir. 2010) (noting there must be an objective reasonable basis to deny coverage). "[T]he adequacy of the investigation and consideration of the claim by the insurer is relevant in determining whether a claim is fairly debatable." Dakota, Minn. & E. R.R. Corp., ¶ 23, 771 N.W.2d at 630. "However, a frivolous or unfounded refusal to comply with a duty under an insurance contract constitutes bad faith." Hein, ¶ 10, 731 N.W.2d at 235.

Whether an insurer acted in bad faith is "determined based upon the facts and law available to [the] [i]nsurer at the time it made the decision to deny coverage." Dakota, Minn. & E. R.R. Corp., ¶ 19, 771 N.W.2d at 629 (alterations in original) (quoting Walz, ¶ 8, 556 N.W.2d

at 70). "The question of whether an insurer has acted in bad faith is generally a question of fact." Id. ¶ 19, 771 N.W.2d at 629–30.

Charter Oak contends that it never denied coverage and argues that it "promptly" paid both claims after "Cole made his first and only demand for payment on January 17, 2012." Doc. 133 at 22, 31. Charter Oak argues that Dziadek's contract claim did not "mature" until early 2012, and that because Charter Oak timely paid thereafter, it performed the insurance contract and cannot be responsible for bad faith. Doc. 133 at 23, 29. As discussed in the breach of contract analysis, a question of fact exists on whether Charter Oak breached its contract and whether Charter Oak's conduct prevented Dziadek from making her formal demand for contract benefits in 2009.

Considering the facts in the light most favorable to Dziadek and the evidence known to Charter Oak during the pertinent time, a jury could determine that Charter Oak actually denied Dziadek's claim on February 12, 2009, and did so in bad faith. The February 12, 2009 letter from Styles to Cole stating that "no coverage for your client [Dziadek] exists under this policy" could constitute a denial of coverage and could provide a justification of why no demand for payment was made until 2012. Cole believed that the letter denied his client, Dziadek, coverage under the entire Policy and a reasonable jury could infer the same. See Kirchoff, 997 F.2d at 405 (noting that although insurer claimed no denial was made, insured's belief that insurer's offer to pay only estimated defense costs operated as an effective denial could be the conclusion of a reasonable person). At the time of the February of 2009 letter, Charter Oak knew that Peterson was driving a Billion vehicle covered by the Policy, that Peterson was at fault for the accident, that Peterson was a Progressive insured with a $100,000 limit of liability policy, that Dziadek was an injured passenger in the vehicle, that Dziadek's counsel was interested in insurance

coverage for Dziadek under the Policy, and that Dziadek had incurred medical bills exceeding $100,000. As Charter Oak has admitted after being sued, Dziadek was an insured under UIM and medical payments provisions of the Policy, yet Charter Oak wrote on February 12, 2009 that "no coverage for your client [Dziadek] exists under this policy." A reasonable jury could find that Charter Oak's denial on February 12, 2009, was more than a mere error in judgment, a mistake, or done negligently, Bertelsen v. Allstate Ins. Co. (Bertelsen III), 2013 SD 44, ¶ 45, 833 N.W.2d 545, 561, but that Charter Oak acted with knowledge of or recklessly disregarded the facts. See Kirchoff, 997 F.2d at 405 (affirming jury verdict that insurer acted in bad faith in negotiating settlement with $8,000 offer, even when value of claim was in dispute, because tortfeasor's liability was clear and insurer knew insured suffered serious injuries). A jury could also reasonably determine that Charter Oak consciously engaged in wrongdoing in processing the facts surrounding the accident and then conveying in 2009 that Dziadek had no coverage under the Policy. See id.; see also Dakota, Minn. & E. R.R. Corp., ¶ 18, 771 N.W.2d at 629 (quoting Hein, ¶ 10, 731 N.W.2d at 235) (providing that even if an insurer fully compensates an insured, bad faith may still be committed if the insurer 'consciously engages in wrongdoing during its *processing* or *paying* of policy benefits to its insured").

Charter Oak argues that Dziadek's claim was fairly debatable because Styles says she was responding to an inquiry about liability coverage for Peterson in 2009. When a claim is fairly debatable as a matter of law, summary judgment for the insurer on a bad faith claim is proper. See Anderson, 857 F. Supp. 2d at 905–06; Dakota, Minn. & E. R.R. Corp., ¶¶ 20, 23, 771 N.W.2d at 630. The disparate versions of the conversation between Cole and Styles on February 6, 2009, do not render the claim fairly debatable, but instead give rise to a genuine issue of material fact precluding summary judgment. Cole recalls that he asked Styles about

coverage for Peterson and Dziadek, and that Styles said there was no coverage for either; Styles recalls only being asked about coverage for Peterson and thus justifies her response as being intended only to address Peterson's lack of liability coverage under the Policy. When bad faith claims involve such disputed facts, summary judgment should be denied. See Tripp v. W. Nat'l Mut. Ins. Co. (Tripp I), No. 09–4023–KES, 2010 WL 547181, at *4–5 (D.S.D. Feb. 9, 2010) (denying insurer's motion for summary judgment because insurer had no information to dispute value of insured's damages, insurer failed to investigate for two years after submitted claim, and material issues of fact existed regarding whether counteroffer by insurer was made in good faith).

Charter Oak also argues that Dziadek is unable to show any actual or consequential damages for any bad faith refusal to pay because the full limits of both UIM and medical payments coverages now have been paid. However, the Supreme Court of South Dakota has held that even after an insurance company pays a claim for benefits, the insurer can be liable for bad faith if the insurer unreasonably delayed payment of a claim and if the insured suffered a compensable loss as a result. McDowell v. Citicorp U.S.A., 2007 SD 53, ¶¶ 15–16, 734 N.W.2d 14, 19. Dziadek has sufficiently alleged damages as a result of the delay by (1) losing the use of Progressive's $100,000 tender from 2009 to 2012, and the loss of an opportunity to resolve bills and subrogation obligations earlier; (2) attorney's fees[6] and litigation expenses that would have been saved as a result of Charter Oak tendering the full policy limits in 2009; (3) physical and

---

[6]In Hurley v. State Farm Mutual Automobile Insurance Co., No. 10–4165–KES, 2012 WL 6012803, at *5 (D.S.D. Dec. 3, 2012), Judge Schreier "predict[ed] that the South Dakota Supreme Court would conclude that a bad faith claim can support an award of compensatory damages that includes as an element the attorney's fees expended in a previously litigated breach of contract action." Judge Schreier reasoned that attorney's fees are a detriment to the insured proximately caused by the insurer's bad faith refusal to pay policy benefits and such an award aligns with South Dakota policy. Id. at *4–5.

mental strain Dziadek suffered between 2009 and 2012 as a result of not having enough money to pay for certain medications not otherwise affordable to her; and (4) financial and emotional strain Dziadek suffered between 2009 and 2012, such as needing to sell property in order to cover financial obligations, and struggling to pay health insurance premiums after losing her job.[7] Simply by paying the claim after being sued, Charter Oak has not thereby entitled itself to summary judgment on Dziadek's bad faith claim.

### F.  FRAUD/DECEIT CLAIM

Dziadek in Count 7 of her Amended Complaint asserts a claim of fraud, or in the alternative, the tort theory of deceit under SDCL §§ 20–10–1 and 20–10–2(1)–(3).[8]  Doc. 15 at ¶¶ 90–95.  The Supreme Court of South Dakota has stated that "cases of fraud and deceit require a higher degree of specificity in order to avert summary judgment." Arnoldy v. Mahoney, 2010 SD 89, ¶ 38, 791 N.W.2d 645, 658; see also Bruske v. Hille, 1997 SD 108, ¶ 11, 567 N.W.2d 872, 876 (stating specific material facts must be presented in order to prevent summary judgment on fraud and deceit claims).

---

[7]Nothing in this opinion and order endorses Dziadek's damage claims or determines admissibility of evidence of mental or emotional strain.  Rather, argument as to admissibility of such damage claims and the applicability of Paulsen v. Ability Insurance Co., 906 F. Supp. 2d 909 (D.S.D. 2012), or Fix v. First State Bank of Roscoe, 2011 SD 80, 807 N.W.2d 612, is left for ruling on motions in limine or at trial.

[8]In Rist v. Karlan, the Supreme Court of South Dakota noted that "one who brings an action in tort or in contract should be careful to distinguish between [SDCL §§ 53–4–5, 20–10–1, and 20–10–2]." 241 N.W.2d 717, 719 n.* (S.D. 1976). SDCL § 53–4–5 defines "actual fraud applicable to contract law," while SDCL §§ 20–10–1 and 20–10–2 "define the elements of the tort of deceit, which is a species of fraud." Id. Dziadek argues that "in cases involving allegations of fraud in relation to a contract, SDCL 53–4–5 says the existence of actual fraud is always a question of fact." Doc. 125 at 5.  Charter Oak counters that Dziadek did not "allege fraud under SDCL 53–4–5 in her Complaint." Doc. 129 at 28.  Dziadek's Amended Complaint only alleges an independent tort action arising from contract, and thus, actual fraud under SDCL § 53–4–5 is not properly before this Court.  See Stabler v. First State Bank of Roscoe, 2015 SD 44, ¶¶ 12–14, 865 N.W.2d 466, 474–75 (noting difference between the statutes provided as sounding in either tort or contract).

The essential elements of fraud are:

[T]hat a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

Grynberg v. Citation Oil & Gas Corp., 1997 SD 121, ¶ 24, 573 N.W.2d 493, 502 (alteration in original) (quoting Holy Cross Par. v. Huether, 308 N.W.2d 575, 576 (S.D. 1981)).

The South Dakota statute establishing the tort of deceit states, "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL § 20–10–1. Deceit is further defined, in pertinent part, as either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [or]
(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.][9]

SDCL § 20–10–2(1)–(3). "[T]he provisions of the foregoing statutes are declaratory of the common law and comprehend an intention to mislead." Rist, 241 N.W.2d at 719. The Supreme Court of South Dakota views questions of fraud and deceit as generally being questions of fact reserved for the fact finder. Tri-State Ref. & Inv. Co. v. Apaloosa Co., 431 N.W.2d 311, 314 (S.D. 1988); Rist, 241 N.W.2d at 720.

Dziadek asserts that Charter Oak made untrue statements and material omissions regarding disclosure of the Policy and whether and how Dziadek was covered under the Policy. Doc. 15 at ¶ 91. Charter Oak counters that Dziadek's cause of action for fraud and deceit must

---

[9]Dziadek does not claim that SDCL § 20–10–2(4), "[a] promise made without any intention of performing" is an applicable deceit definition in this case.

fail because it is "legally predicated on a breach of contract," and the requisite intent and loss required by statute are absent. Doc. 133 at 26, 40–43.

Dziadek's fraud and deceit claims are tort actions arising from an insurance contract. The Supreme Court of South Dakota has recognized that "'an omission to perform a contract obligation is never a tort,' but . . . that the breach of a legal duty upon which a tort is based 'may arise out of a relation or state of facts created by contract . . . .'" Karas v. Am. Family Ins. Co., 33 F.3d 995, 998 (8th Cir. 1994) (quoting Smith v. Weber, 16 N.W.2d 537, 539 (S.D. 1944)). As a result, "[w]hile the matters complained of ... [may have] had their origin in a contract, the gist of the action is for alleged wrongful and tortious acts of defendant." Id. (alterations in original) (quoting Smith, 16 N.W.2d at 539). Here, Dziadek claims a legal duty exists *independent of* the obligations under the Policy, namely that Charter Oak owed Dziadek the duty to "respect her rights of property and refrain from invading them by fraud." Doc. 15 at ¶ 90. The tort claims of fraud and deceit are both related to but independent of the contract claim. Charter Oak had an obligation to refrain from making statements intended to defraud or deceive Dziadek about the existence of coverage for her, separate and apart from its duties under the Policy. See Grynberg, ¶ 22, 573 N.W.2d at 501 (finding duty independent of the obligations under the contract and stating, "Simply put, a contract is not a license allowing one party to cheat or defraud the other."). Even though the torts "grow out of" or are "coincident with" the Policy, Charter Oak is "not immune . . . from the penalty that is ordinarily visited upon tort-feasors." Smith, 16 N.W.2d at 539.

Dziadek has presented sufficient evidence to create a genuine issue of material fact on the elements of fraud. The evidence supports a reasonable inference that Charter Oak made a material representation of fact in the February 12, 2009 letter—that Dziadek had no coverage

under the Policy—that was untrue.  At least Styles at Charter Oak knew at the time that Dziadek was an injured passenger in a car insured under the Policy, that Dziadek already had accumulated medical bills exceeding Progressive's $100,000 liability limit, and that Dziadek was looking for coverage under the Policy.  The evidence also supports a reasonable inference that Charter Oak knew or should have known that Dziadek qualified as an insured under the UIM and medical payments endorsements and that at least Styles at Charter Oak knew this (or recklessly disregarded this) at the time the letter was sent stating that Dziadek had no coverage under the Policy.  Charter Oak maintains that the letter was the product of Cole asking about liability coverage and not a product of Charter Oak attempting to deceive or defraud Dziadek about UIM or medical payments coverage.  However, viewing the facts in the light most favorable to Dziadek, a reasonable jury could find that Charter Oak sent the denial with intent to deceive Dziadek and induce her to act (or in this case, fail to act by foregoing making UIM and medical payments coverage claims) and that Dziadek relied on the letter to her detriment.

Likewise, Dziadek has presented sufficient evidence to create a genuine issue of material fact on the elements of the tort of deceit.  The same circumstances set forth in the preceding paragraph can be viewed as a deceit.  In addition, viewed in the light most favorable to Dziadek, Styles' decision in 2009 to send only highlighted excerpts of "who was an insured" rather than sending Cole copies of the UIM and medical payments endorsements, her apparent reluctance to send the full Policy when requested in 2011, and her lack of response to Brendtro's letter seeking to confirm coverage for Dziadek could be viewed as evidence of an intention to mislead and deceive under SDCL § 20–10–2(1)–(3).

Charter Oak contends that even if the fraud and deceit claims survive the scienter requirements for summary judgment, both claims must fail for want of damages because the

23

UIM and medical payments coverages have been paid in full. But under the independent tort doctrine, payment of policy limits does not preclude Dziadek from further recovery. The measure of damages is contained in SDCL § 21–3–1, which provides that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." See also Grynberg, ¶ 26, 573 N.W.2d at 502 (allowing plaintiff's independent tort recovery to include punitive damages because if "not caught in his fraudulent scheme . . . defendant has all to gain and nothing to lose" (quotation omitted)); see also Liebig v. Kirchoff, 2014 SD 53, ¶ 29, 851 N.W.2d 743, 751 (noting that victim is entitled to damages incurred before discovery of deceitful and fraudulent conduct by defendant). Therefore, although both the coverage limits have been paid, Dziadek has alleged and provided some evidence of damages beyond the policy limits. Therefore, because the essential elements of fraud and deceit have evidentiary support (albeit disputed) in the record, summary judgment is inappropriate on the fraud and deceit claims.

### G. PUNITIVE DAMAGES CLAIM

Count 8 of the Amended Complaint claims punitive damages, which is not a separate cause of action but a type of damages available to punish and deter those who perpetrate intentional torts. Punitive damages may not be recovered under South Dakota law unless expressly authorized by statute. SDCL § 21–1–4. South Dakota law provides that in an action "for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant." SDCL § 21–3–2. The Supreme Court of South Dakota has recognized that an insured may "seek

punitive damages from her insurer when prosecuting a bad faith action." Biegler v. Am. Family Mut. Ins. Co., 2001 SD 13, ¶ 42, 621 N.W.2d 592, 604. "To submit a punitive damage claim to the jury, the . . . court must find by 'clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.'" Selle v. Tozser, 2010 SD 64, ¶ 29, 786 N.W.2d 748, 757 (quoting SDCL § 21–1–4.1).

"Malice is an essential element of a claim for punitive damages. . . . [and] can be actual (malice in fact) or presumed (legal malice)." Bertelsen III, ¶ 22, 833 N.W.2d at 555 (quoting Selle, ¶ 30, 786 N.W.2d at 757). The Supreme Court of South Dakota has defined these terms as follows:

> Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. . . . Presumed, legal malice . . . is malice which the law infers from or imputes to certain acts. Thus, while the person may not act out of hatred or ill-will, malice may nevertheless be imputed if the person acts willfully or wantonly to the injury of the other.

Selle, ¶ 30, 786 N.W.2d at 757 (quoting Isaac v. State Farm Mut. Aut. Ins. Co., 522 N.W.2d 752, 761 (S.D. 1994)). The Supreme Court of South Dakota has elaborated on willful and wanton misconduct as follows:

> There must be facts that would show that defendant intentionally did something . . . which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff. . . . Such state of mind is determined by an objective standard rather than the subjective state of mind of the defendant.

Berry v. Risdall, 1998 SD 18, ¶ 35, 576 N.W.2d 1, 9 (quoting Tranby v. Brodock, 348 N.W.2d 458, 461 (S.D. 1984)); see also Hill v. Auto Owners Ins. Co., No. Civ. No. 14−5037−KES, 2015 WL 2092680, at *7–8 (D.S.D. May 5, 2015).

Charter Oak argues that Dziadek has not presented evidence of malice to survive summary judgment. But, as discussed above, the evidence viewed in the light most favorable to Dziadek could support a jury finding of fraud or deceit. Such a finding provides a sufficient basis for a punitive damage claim to survive. Biegler, ¶¶ 42, 46, 621 N.W.2d at 604–05; see also Grynberg, ¶ 26, 573 N.W.2d at 502. Furthermore, the entitlement of Dziadek to UIM and medical payments coverage was not fairly debatable when the facts are viewed in Dziadek's favor. Bertelsen v. Allstate Ins. Co. (Bertelsen II), 2011 SD 13, ¶ 41, 796 N.W.2d 685, 699 (stating that a "denial of a claim that is not fairly debatable may indicate malice"). And a reasonable jury could conclude, if it believes Dziadek's evidence and theory of the case, that Charter Oak's letter in February of 2009 wrongfully denied coverage and that Charter Oak's subsequent delays in providing Dziadek the requested coverage provisions and acknowledging the existence of coverage for Dziadek is evidence of oppression, fraud, and malice. McElgunn v. Cuna Mut. Ins. Soc., 700 F. Supp. 2d 1141, 1154–55 (D.S.D. 2010) (denying renewed motion for judgment as a matter of law because jury could reasonably find malice where insurer delayed payment to insured) see also Selle, ¶ 30, 786 N.W.2d at 757 ("A claim for presumed malice can be shown by demonstrating a disregard for the rights of others." (quoting Isaac, 522 N.W.2d at 761)). A final decision on the submission to the jury of a punitive damages claim is reserved for trial, but the punitive damages claim survives Charter Oak's motion for summary judgment.

## H. ATTORNEY'S FEES CLAIM

Finally, Dziadek alleges in Count 9 of the Amended Complaint that Charter Oak's actions warrant an award of attorney's fees. In South Dakota, an insured may recover the costs of his or her attorney fees in an action against an insurer who "has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause." SDCL § 58–12–3. This Court must determine three things before it can award attorney's fees. "First, whether the

insurance company refused to pay the full amount of a loss.  Second, whether the refusal was vexatious or without reasonable cause.  And third, what is a reasonable charge for the work performed to enforce the insurance contract claim, vis-à-vis any other claims jointly brought." Biegler, ¶ 56, 621 N.W.2d at 606.  SDCL § 58–12–3 has an "obvious objective . . . to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right."  Bertelsen III, ¶ 29, 833 N.W.2d at 557 (quoting Tripp v. W. Nat'l Mut. Ins. Co. (Tripp III), 664 F.3d 1200, 1205 (8th Cir. 2011).  "The statute is 'given a liberal construction with a view to effect its objects and to promote justice.'"  Id. (quoting Tripp III, 664 F.3d at 1205).

Dziadek has presented sufficient evidence that she may be entitled to attorney's fees, at least up to the point when Charter Oak answered the Complaint and admitted Dziadek's entitlement to coverage.  Charter Oak argues that there was no refusal to pay the full amount of the loss, as required by SDCL § 58–12–3, because it paid Dziadek its coverages limits.  SDCL § 58–12–3, however, "precludes an award of attorney fees 'when a tender is made by such insurance company . . . *before the commencement of the action* . . . and the amount recovered is not in excess of such tender[.]"  Tripp v. W. Nat'l Mut. Ins. Co. (Tripp II), No. 09–4023–KES, 2010 WL 4791819, at *1 (D.S.D. Nov. 17, 2010) (alteration in original) (quoting SDCL § 58–12–3), aff'd, Tripp III, 664 F.3d 1200 (8th Cir. 2011).  In this case, Charter Oak did not tender policy limits until February 21, 2012, after the commencement of the action.  Thus, there is a genuine issue of material fact on an alleged refusal to pay prior to February of 2012 under SDCL § 58–12–3.

## IV.  CONCLUSION

For the reasons explained above, it is hereby

ORDERED that Dziadek's request in briefing for leave to amend the Amended Complaint, Doc. 125 at 48, is denied. It is further

ORDERED that Defendant's Motion for Summary Judgment, Doc. 118, is granted on Count 4 only and is otherwise denied. It is finally

ORDERED that the parties cooperate with the Court to select a date for a jury trial of the case, with a pretrial conference and motion hearing to be set approximately one week prior to trial and with a deadline for pretrial disclosures and motions in limine set two weeks prior to the pretrial conference and motion hearing.

DATED this 1st day of December, 2015.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE