UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

APR 2 2 2016



| | |
|---|---|
| LAURA DZIADEK,<br><br>Plaintiff,<br><br>vs.<br><br>THE CHARTER OAK FIRE INSURANCE COMPANY, d/b/a TRAVELERS,<br><br>Defendant. | 4:11-CV-04134-RAL<br><br>OPINION AND ORDER QUASHING SUBPOENA AND DENYING DEFENDANT'S MOTIONS FOR RECONSIDERATION |

**I. INTRODUCTION**

Plaintiff, Laura Dziadek ("Dziadek"), sued Defendant, Charter Oak Fire Insurance Company, doing business as Travelers ("Charter Oak"), making claims sounding in contract and tort relating to a commercial insurance policy issued by Charter Oak ("Policy"). Doc. 15. Dziadek's Amended Complaint asserts that she is entitled to declaratory judgments that she is an insured under the underinsured ("UIM") endorsement with Charter Oak owing her a duty of good faith and fair dealing, that $1,000,000 of UIM coverage exists, and that she is an insured under the medical payments endorsement. Doc. 15 at ¶¶ 15–51. Dziadek further alleges Charter Oak breached the insurance contract and engaged in unfair trade practices, fraud and deceit, and bad faith in its dealings with Dziadek. Doc. 15 at ¶¶ 52–95. Dziadek seeks relief in the form of compensatory damages, punitive damages, and attorney's fees. Doc. 15 at ¶¶ 96–102; Doc. 15 at 13–14. After the lawsuit was filed, Charter Oak acknowledged coverage, paid $900,000 under

1

the UIM coverage,[1] and paid its $5,000 medical payments coverage limit. Charter Oak then moved for summary judgment on all claims. Doc. 118. On December 1, 2015, this Court issued an Opinion and Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment ("Opinion and Order"), granting summary judgment on the unfair trade practices claim only and otherwise denying the remainder of the motion. Doc. 153 at 28. Thereafter, this Court issued an Order Setting Jury Trial and Pretrial Deadlines, setting the pretrial conference for April 29, 2016 at 9:00 a.m. and the jury trial to begin May 16, 2016 at 9:00 a.m. Doc. 156 at 1–2.

Various motions are currently pending before this Court, including Plaintiff's Motion to Quash Subpoena Issued by Travelers to Farmers Insurance, Doc. 161, and four reconsideration motions filed by Charter Oak regarding this Court's Opinion and Order on Charter Oak's Motion for Summary Judgment, Docs. 167, 170, 172, 174. Charter Oak's reconsideration motions focus on coverage under the medical payments endorsement and prior determinations made by this Court regarding Dziadek's breach of contract, bad faith, and fraud and deceit claims. Docs. 167, 170, 172, 174. For the reasons explained below, this Court quashes Charter Oak's subpoena and denies Charter Oak's motions for reconsideration.

## II. DISCUSSION

### A. Dziadek's Motion To Quash Subpoena

On March 23, 2016, Charter Oak issued a subpoena to Farmers Insurance Exchange under Federal Rule of Civil Procedure 45 seeking the employments records of Dziadek's expert Rob Dietz, who worked for Farmers from 1987 to 2001. Doc. 161. Dziadek moved to quash the subpoena, arguing that Charter Oak had violated the discovery deadline and had failed to

---

[1] Charter Oak under South Dakota law was entitled to an offset from the $1,000,000 UIM limits for the $100,000 received from Progressive Insurance Company, the tortfeasor's insurer. See S.D. Codified Laws ("SDCL") § 58-11-9.5; Kirchoff v. Am. Cas. Co., 997 F.2d 401, 402 n.2 (8th Cir. 1993).

2

establish good cause for doing so. Doc. 161. Charter Oak replied that Dziadek does not have standing to oppose a subpoena to a third party that is not a witness for her. Doc. 163.

A party typically lacks standing to challenge a subpoena issued to a non-party absent a personal right or privilege in the documents requested. Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins., No. 4:08MC00017 JLH, 2008 WL 4853620, at *1 (E.D. Ark. Nov. 6, 2008); 9A Charles Alan Wright et al., Federal Practice and Procedure § 2459 (3d ed. 2010). Nevertheless, at least some courts have concluded that a plaintiff has standing to challenge a subpoena issued to a non-party on the ground that the subpoena was beyond the discovery deadline. Phipps v. Adams, No. 3:11-cv-147-GPM-DGW, 2012 WL 3074047, at *3 (S.D. Ill. July 30, 2012); Hartz Mountain Corp. v. Chanelle Pharm. Veterinary Prods. Mfg., 235 F.R.D. 535, 536 (D. Me. 2006). Regardless of Dziadek's standing to file her motion, this Court has the inherent power to quash an untimely subpoena. Dedmon v. Cont'l Airlines, Inc., No. 13-cv-0005-WJM-NYW, 2015 WL 1740095, at *2 (D. Colo. Apr. 14, 2015); Morrison v. Chartis Prop. Cas. Co., No. 13-CV-116-JED-PJC, 2014 WL 5341785, at *1 (N.D. Okla. Oct. 20, 2014); Peterbilt of Great Bend, LLC v. Doonan, No. 05-1281-JTM, 2006 WL 3193371, at *1–2 (D. Kan. Nov. 1, 2006) (concluding that defendants did not have standing to move to quash subpoena duces tecum to third party but quashing the subpoena because it was beyond the discovery deadline). Thus, the relevant question here is not whether Dziadek has standing to challenge the subpoena but whether the subpoena violates the discovery deadline.

The sixth and final scheduling order in this case provides that "[a]ll discovery, including expert discovery, shall be commenced in time to be completed by **March 2, 2015**." Doc. 101 at 1. The majority of courts agree that Rule 45 subpoenas constitute discovery and are therefore governed by the discovery deadlines set forth in a scheduling order. See Dhaliwal v. Singh, No.

3

1:13-cv-00484-LJO-SKO, 2014 WL 3401384, at *2 (E.D. Cal. July 11, 2014) ("In a majority of jurisdictions, . . . Federal Rule of Civil Procedure 45 subpoenas constitute pretrial discovery that must be served within the specified discovery period."); Dag Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 104 (D.D.C. 2005) ("Rule 45 subpoenas are 'discovery' under Rules 16 and 26 of the Federal Rules of Civil Procedure, and are subject to the same deadlines as other forms of discovery."); 9 James Wm. Moore et al., Moore's Federal Practice § 45.03[2] (3d ed. 2015) ("[O]nce the discovery deadline established by a scheduling order has passed, a party may not employ a [Rule 45] subpoena to obtain materials from a third party that could have been procured during the discovery period."). The requirement that Rule 45 subpoenas must be issued before the discovery deadline is not absolute, however. "Rule 45 subpoenas may be employed in advance of trial and outside of a discovery deadline for the limited purposes of memory refreshment, trial preparation, or to secure for the use at trial original documents previously disclosed by discovery." Circle Grp., LLC v. Se. Carpenters Reg'l Council, 836 F. Supp. 2d 1327, 1352 (N.D. Ga. 2011).

Although Charter Oak does not specifically argue that its subpoena to Farmers Insurance Exchange is a "trial subpoena" not subject to the discovery deadline, Charter Oak does contend that the documents it seeks from Farmers will be relevant for "potential impeachment" of Dietz. Doc. 163 at 1. Under certain circumstances, courts have allowed Rule 45 subpoenas issued after the discovery deadline when the subpoenas were narrowly tailored and sought documents only for purposes of cross-examination and impeachment. See, e.g., Joseph P. Carroll Ltd. v. Baker, No. 09 Civ. 3174(SHS), 2012 WL 1232957, at *2–3 (S.D.N.Y. Apr. 12, 2012); Malmberg v. United States, No. 5:06-cv-1042 (FJS/GHL), 2010 WL 1186573, at *3 (N.D.N.Y. Mar. 24, 2010). In Carroll, for instance, the defendant issued a belated subpoena seeking depositions of

4

the plaintiff's principal in two related cases. Carroll, 2012 WL 1232957, at *1. The defendant's attorney averred that he did not learn of the depositions until several months after the discovery deadline expired. Id. The district court in Carroll concluded that because the defendant intended to use the depositions solely for cross-examination and impeachment, the subpoena constituted a trial subpoena and could therefore be issued after the discovery deadline. Id. at *2–3 (relying on Malmberg, 2010 WL 1186573, at *3). The district court in Malmberg reached a similar conclusion. In Malmberg, the defendant issued tardy subpoenas requesting documents that it had learned of while deposing the plaintiff's expert witness less than a week before the discovery deadline. 2010 WL 1186573, at *3. The district court held that the subpoenas were "properly classified as trial subpoenas" because they were "very limited in scope" and would only be used for cross-examination and impeachment. Id.

Carroll and Malmberg do not stand for the proposition that parties may always issue subpoenas outside the discovery deadline as long they assert that the requested documents will be used for impeachment. When the party issuing the belated subpoena could have obtained the requested documents during discovery, courts will quash the subpoena as untimely notwithstanding the party's contention that the documents are for impeachment. See Nickerson v. State Farm Ins., No. 5:10CV105, 2011 WL 5119542, at *2–3 (N.D.W. Va. Oct. 27, 2011) (declining to allow plaintiff's belated subpoena that sought documents for the purpose of showing expert's bias during cross-examination where there was no reason why the plaintiff could not have obtained the documents during discovery); Abrams v. Ciba Specialty Chems. Corp., 265 F.R.D. 585, 588–89 (S.D. Ala. 2010) (quashing belated subpoena seeking expert witness's educational records despite defendant's contention that it needed the records for trial preparation where defendants should have anticipated this need during the discovery period);

5

Rice v. United States, 164 F.R.D. 556, 557–58 (N.D. Okla. 1995) (quashing belated subpoena seeking impeachment material where materials could have been produced during discovery). Courts will also quash a belated subpoena despite the issuing party's contention that the requested documents will be used for impeachment when the subpoena is overly broad. Revander v. Denman, No. 00 Civ. 1810(RJH), 2004 WL 97693, at *1–2 (S.D.N.Y. Jan. 21, 2004) (rejecting argument that subpoenas were trial subpoenas to be used for cross-examination where subpoenas employed "shotgun" approach by requesting "any and all records regarding" the plaintiff's incarceration).

Applying the case law discussed above to the facts of this case makes clear that Charter Oak's subpoena should be quashed. Charter Oak could have obtained Dietz's employment records during discovery. Dziadek's expert disclosure, which was required to include a report detailing Dietz's qualifications as a witness, was due by November 19, 2014, which is well before the discovery deadline. Doc. 101 at 2. Even if the expert disclosure had neglected[2] to list Dietz's fourteen years working at an insurance company as one of his qualifications, Charter Oak had an opportunity to depose Dietz and could have learned of his employment history then. Charter Oak long ago could have anticipated any need for such impeaching evidence from Dietz's prior employers before the discovery deadline expired. Charter Oak tellingly has made no argument in briefing that it had good cause for waiting until now to seek Dietz's employment records. Moreover, Charter Oak's subpoena is not of a very limited nature for documents truly necessary for trial. Rather than issuing a narrowly-tailored subpoena like the parties in Carroll and Malmberg, Charter Oak seeks, among other things, "[a]ll documents relating to the employment of Rob Dietz by Farmers Insurance Exchange (or any affiliated company thereof)

---

[2]There is nothing of record suggesting that there was any such omission here.

6

('FIE'), from 1987 to 2001." Doc. 161 at 2. Charter Oak's "shotgun" request for all documents relating to Dietz's employment undermines any contention that the subpoena is a narrow trial subpoena. Revander, 2004 WL 97693, at *2. Charter Oak's broadly-worded subpoena seeking documents it could have obtained during the discovery period constitutes a discovery, rather than a trial, subpoena. Because Charter Oak issued the subpoena after the discovery period expired, this Court quashes the subpoena for being untimely.

**B. Charter Oak's Motions to Reconsider & Request to Certify Breach of Contract Question to the State Court**

Charter Oak moves this Court to reconsider determinations it made on Charter Oak's motion for summary judgment under Federal Rule of Civil Procedure 54(b). Docs. 167, 170, 172, 174. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also Julianello v. K-V Pharm. Co., 791 F.3d 915, 923 n.3 (8th Cir. 2015) (noting that Rule 54(b), rather than Rule 60(b), is the appropriate rule under which to consider a reconsideration motion when final judgment has not yet entered on any of plaintiff's claims).

A district court's decision to reconsider a motion for summary judgment is reviewed under the abuse of discretion standard because "[t]he district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." K.C.1986 Ltd. P'ship v. Reade Mfg., 472 F.3d 1009, 1017 (8th Cir. 2007) (quoting Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir.1995)). Courts generally should not reopen issues decided in prior stages of the same litigation unless the court is "convinced that [its

7

prior decision] is clearly erroneous and would work a manifest injustice." Agostini v. Felton, 521 U.S. 203, 236 (1997) (alteration in original) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).

None of the arguments contained in Charter Oak's motions for reconsideration warrant modification of this Court's Opinion and Order on Charter Oak's motion for summary judgment. See id. Many of Charter Oak's arguments include reiteration of the same arguments made in its initial briefing, which were previously considered by this Court, and do not advance new and controlling authority. Charter Oak also supports many of its arguments by arguing the facts in the light most favorable to Charter Oak and not taking the facts and reasonable inferences in the light most favorable to Dziadek as the non-movant. Such a view of the facts is inappropriate on a motion for summary judgment. See, e.g., Ferguson v. Cape Girardeau Cty., 88 F.3d 647, 650 (8th Cir. 1996) (stating that on summary judgment, courts must "take all facts and reasonable inferences in the light most favorable to the nonmoving party"). As for those arguments that Charter Oak raises for the first time in its reconsideration motions and briefing, the United States Court of Appeals for the Eighth Circuit has stated that "[a] motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." Julianello, 791 F.3d at 923; see also Macawber Eng'g, Inc. v. Robson & Miller, 47 F.3d 256, 257 n.4 (8th Cir. 1995) (stating that district courts have "wide discretion in determining whether to consider additional evidence after a motion for summary judgment has been granted"). This Court set forth in a rather lengthy Opinion and Order why summary judgment was not proper for Charter Oak and need not explain anew why certain causes of action survive Charter Oak's summary judgment motion.

Two of Charter Oak's arguments, however, merit brief discussion. First, this Court refused to grant summary judgment on certain of Dziadek's tort claims based on legal duties independent of Charter Oak's obligations under the Policy, including that Charter Oak owed Dziadek the duty to "respect her rights of property and refrain from invading them by fraud." Doc. 153 at 22. In its motion to reconsider the denial of summary judgment on the fraud and deceit claims, Charter Oak argues that that Dziadek's fraud claim is not "separate and distinct from the breach of contract" and "could not have existed but for" the Policy. Doc. 173 at 7 (quotation omitted). Charter Oak maintains that Dziadek's fraud claim must fail because she "had no relationship or communication with Charter Oak until after she was injured in an accident, and the obligations she seeks to enforce are those 'specifically included in the terms of the contract.'" Doc. 173 at 8. In Champion v. United States Fidelity & Guaranty Co., 399 N.W.2d 320, 323–24 (S.D. 1987), however, the South Dakota Supreme Court recognized that a separate tort exists in the case of an insurer who unreasonably denies or delays in its performance under an insurance contract with an insured. The independent tort doctrine—precluding such things as negligent performance of contract claims—does not foreclose first-party bad faith claims under South Dakota law. See Stene v. State Farm Mut. Auto. Ins., 1998 SD 95, ¶ 19, 583 N.W.2d 399, 403 (citing Champion, 399 N.W.2d at 322). Similarly, the mere existence of a contractual relationship does not insulate a party from a fraud claim; a contractual relationship does not give rise to a license to commit fraud upon and against another party to the contract. See Doc. 153 at 20–24; Karas v. Am. Family Ins., 33 F.3d 995, 998 (8th Cir. 1994) (applying South Dakota law and quoting Smith v. Weber, 16 N.W.2d 537, 539 (S.D. 1944)). Charter Oak had an obligation to refrain from making statements intended to defraud or deceive Dziadek

9

about the existence of coverage for her, separate and apart from its duties under the Policy, and there exists a genuine dispute of material fact on whether Charter Oak did so.

Second, Charter Oak asserts that this Court's basis for its decision denying summary judgment on the medical payments coverage breach-of-contract claim is erroneous based on a recent decision by the Honorable Lawrence L. Piersol, Peterson v. Travelers Indemnity Co., No. CIV 14-4145, 2015 WL 5841888, *6 (D.S.D. Oct. 6, 2015), appeal docketed, No. 16-1146 (8th Cir. Jan. 19, 2016). Charter Oak argues that in Peterson "Judge Piersol analyzed exactly the same policy language and the same September 22, 2008 accident in which Dziadek was injured and held as a matter of law that the [medical payments endorsement] provided no coverage for that accident." Doc. 168 at 2–3.[3] Thus, Charter Oak submits that the medical payment endorsement similarly does not apply in this case. Doc. 168 at 3. Charter Oak, however, is judicially estopped to argue that the medical payments endorsement does not cover Dziadek, because Charter Oak admitted the following in its Answer and Amended Answer:

> Laura Dziadek, therefore, is an "insured" under the Auto Medical Payments Coverage because she was occupying a covered auto at the time she received her injuries; and she seeks a declaration of this right under 28 U.S.C. § 2201(a).

Doc. 1 at ¶ 51; Doc. 8 at ¶ 51; Doc. 15 at ¶ 51; Doc. 16 at ¶ 51. That prior admission by Charter Oak is binding for purposes of this case. Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314–15 (8th Cir. 1990) (finding party's admission in answer binding where admitting party later proffered evidence contrary to earlier admission); see also Scott v. Comm'r of Internal

---

[3] In Peterson, Judge Piersol found that Peterson did not qualify as an insured under the third definition of "Who Is An Insured" in the medical payments endorsement. 2015 WL 5841888, *6. Judge Piersol subsequently denied Peterson's motion to reconsider. Docs. 169-4, 169-5. That decision is on appeal and for good reason. Because of the doctrine of judicial estoppel, this Court need not address the issue, but has reservations about whether that decision is a correct interpretation of the medical payments policy provisions when properly read in their entirety.

10

Revenue, 117 F.2d 36, 40 (8th Cir. 1941) ("Admissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.").

Alternatively, Charter Oak asks this Court to certify a question regarding breach of contract to the Supreme Court of South Dakota. Doc. 171 at 12–13. In South Dakota, a district court may certify a question of law to the Supreme Court of South Dakota under South Dakota Codified Laws ("SDCL") § 15-24A-1 "if there are questions of law . . . which may be determinative of the cause pending in the certifying court and it appears to the certifying court and to the Supreme Court that there is no controlling precedent in the decisions of the Supreme Court of this state." SDCL § 15-24A-1. "Whether a federal district court should certify a question of state law to the state's highest court is a matter 'committed to the discretion of the district court.'" First Dakota Nat'l Bank v. BancInsure, Inc., No. CIV. 12-4061-KES, 2013 WL 6901237, * 2 (D.S.D. Dec. 31, 2013) (quoting Allstate Ins. Co. v. Steele, 74 F.3d 878, 881–82 (8th Cir. 1996)). Charter Oak chose to wait until after this Court's Opinion and Order denying Charter Oak's motion for summary judgement (and approximately five weeks before trial) to ask for certification of the breach of contract issue to the Supreme Court of South Dakota. The Eighth Circuit has stated that "[t]he practice of requesting certification after an adverse judgment has been entered should be discouraged." Perkins v. Clark Equip. Co., 823 F.2d 207, 210 (8th Cir. 1987); see also Rural Water Sys. No. 1 v. City of Sioux Ctr., 202 F.3d 1035, 1037 n.6 (8th Cir. 2000). Charter Oak's request for certification at this stage in the litigation is denied.

## III. CONCLUSION

For the reasons explained above, it is hereby

11

ORDERED that Plaintiff's Motion to Quash Subpoena Issued to Farmers Insurance, Doc. 161, is granted to the extent that Charter Oak's subpoena to Farmers Insurance Exchange is hereby quashed. It is further

ORDERED that Charter Oak's motions for reconsideration and request for certification, Docs. 167, 170, 172, and 174, are denied.

DATED this 22nd day of April, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE